Della Wiseman, Administratrix, Etc. *v.* A. P. Terry

(No. 6973)

Submitted February 23, 1932. Decided March 1, 1932.

*Alexander Falconer,* for plaintiff in error.

*W. P. Parsons* and *W. B. Kegley,* and *W. M. La Fon,* for defendant in error.

LIVELY, JUDGE:

Della Wiseman, as administratrix of the estate of her eight-year-old son, Joseph, sued defendant for damages for his death which resulted from an explosion of dynamite in one of the houses used by defendant in operating a rock quarry.

The verdict was for defendant on which the court entered judgment of *nil capiat,* and plaintiff prosecutes error.

The declaration charges, in substance, that defendant at the time of the explosion was operating a rock quarry, and in connection therewith owned and used a building for the storage of dynamite and detonator caps, and as a blacksmith shop; that it was the duty of one of the employees to prepare, in the building, the detonator caps for blasting at the quarry, and that he was performing that duty at the time of the accident; that another employee, a blacksmith, was, at the same time, performing his duties as blacksmith in a compartment of the building; that for a long time prior to the accident, the deceased boy was in the habit of playing and loitering near the building with the permission and acquiescense of defendant; that it was the duty of defendant to use due care and caution to prevent the boy from loitering or playing near the building; that this duty was not discharged, that he did not warn the boy, or his companions, of the danger in being near the building, and did not take measures necessary to prevent the boy and his companions from playing and loitering near the building; but negligently and carelessly failed to take any precaution or give any warning, and as a direct and proximate result of such negligence, the boy was killed by an explosion of the dynamite caused by ignition from a detonator cap in the hands of defendant's servant, or from some other cause unknown to plaintiff.

In cases of this character, the declaration must aver the duty owed by defendant, the existence of negligence in its performance, and specify the act causing the damage. *Snider* v. *Wheeling Electric Co.,* 43 W. Va. 661, 28 S. E. 733. The

declaration conforms to this requirement. The declaration says it was the duty of the defendant, knowing that the boy was in the habit of playing and loitering near the building containing dynamite and detonator caps, to give warning to the deceased and take precautions necessary to prevent and restrain him from playing and loitering near the building; that this duty was not performed, and that its non-performance was negligence, resulting in the injury.

The issue presented to the jury under the general plea was, whether defendant had used due care, caution and prudence to prevent the boy from playing and loitering near the building.

Defendant had leased and was operating a rock quarry on land adjoining the Seneca Trail between Union and Salt Sulphur Springs in Monroe county and was crushing rock to be used in the hard-surfacing of that highway. About 150 feet from the rock crusher and a distance of 31 feet from the highway, the tool house was constructed, rather a substantial building, about 14x8 feet with one door, to which was attached a lean-to, open on two sides, in which the blacksmith shop was operated. The powder house was back of the quarry much farther from the road. The property was enclosed by a fence. The oil and gas house which supplied the trucks with oil and gas adjoined the "Seneca Trail" and was perhaps 150 feet from the tool house. About 22 men were employed at the quarry in various capacities, including foreman Hill, but not including defendant who was on the job looking after his quarry operations. Plaintiff lived near the Trail about 1,000 feet from the quarry toward Union, and on the opposite side of the road with her family, consisting of three boys and two girls. Defendant began operations in March, and on the 17th day of May, 1930, about two months after the operation began, an explosion of dynamite occurred in the tool house which demolished the house, killed Paul Shires, who was in the tool house, the blacksmith Johnson, and the three sons of plaintiff, one fourteen years old, the other ten, and the youngest eight, and also a water boy who seems to have been near the building at the time of the explosion. This action is, as above stated, for the death of the

plaintiff's youngest son, Joseph. No one seems to know what caused the dynamite to let go. Shires was seen in the tool house a short time before the explosion, but no one was positive as to what he was doing. Whether he was preparing the caps to go on the dynamite is chimerical. It was one of his duties which he was instructed to perform, and usually performed, elsewhere. Nor is it shown how much dynamite was in the tool house where it was placed temporarily for use at the quarry nearby. There were two cases weighing about fifty pounds each found in one corner of the tool house after the explosion and which were not much disturbed by the explosion. The dynamite which exploded, the amount of which is unknown, was in another part of the tool house where it made an excavation in the ground.

On the issue of the reasonable care and precaution exercised by defendant to prevent the boy from playing and loitering near the tool house and blacksmith shop, plaintiff showed by several witnesses that all three of the boys frequently came to the quarry and to the blacksmith shop, and that the oldest boy was seen a time or so helping the blacksmith either in holding irons or keeping the fire going; and the three were seen near the tool house a short time before the explosion which occurred at noon. On the other hand, it was shown that all of the workmen were instructed to keep children off the works, as well as all other persons; that Hill, the foreman, had driven them from the quarry to the road, and that they had been told by others connected with the operations to stay away as they were liable to be injured. About twenty minutes before the explosion, witness Skelton says the boys were standing near the blacksmith shop when Hill, the foreman, came to the shop and drove them over the fence into the highway following them until they crossed the fence, the larger boy going over the fence and the smaller boys through it. Hill says he went to the shop at 11:30 to get a piece for the crusher and found the boys there and told them to go home, and they immediately left, he following them until they crossed to the highway, and started in the direction of their home. He remained at the shop three or four minutes, and went back to his duties, and the explosion

occurred at noon. Defendant Terry had observed the boys at the crusher on a former occasion, and had told them to stay off the premises, that they were in danger of being hurt, and had taken the oldest boy by the hand and led him to the highway, the others preceding them. He is corroborated by other witnesses. Both defendant and the foreman say they saw the boys there two or three times only and then required them to leave, warning them that they might get hurt. The blacksmith was told not to permit boys about the shop. The boys would frequently come to the oil house, and Tilley, who was in charge of the trucks, upon instructions of defendant, kept them away from the oil house as best he could, and at one time went so far as to "get a brush" after them and to chase them away.

The first point of error is the refusal to permit evidence offered by plaintiff to show the character and extent of the use of the highway by the public, and the remark made by the trial judge in rejection of that evidence wherein he said: "I will sustain the objection. I have given this careful consideration. If this child had been killed on the public highway, then this would be pertinent, but it is on the theory of being an invitee and not a trespasser. Had you said this constituted a nuisance to all those travelling the public road and the child was on the public road and by reason of that it was killed in a place it had a right to be, that would be pertinent." While evidence was admitted to show that busses and mail carrier passed over the road during the progress of the work, the extent of its use by others would have had little bearing on the issue raised by the pleadings, and was properly rejected. The remark of the court in rejecting the evidence and its possible effect on the jury, will hereinafter be considered in connection with defendant's instruction No. 9, defining who are trespassers. The declaration did not charge that the maintenance of the tool house constituted a public nuisance, and does not charge negligence in that regard, and the proffered instructions submitting that question to the jury and telling them that its maintenance near a public road made defendant liable without evidence of other negligence, were properly refused.

Error is predicated on permitting evidence showing that defendant had instructed his foreman and all of his employees not to allow children, or others, on or about the operation. It is argued that such instructions were self-serving declarations, and should have been rejected on that theory. *Scott* v. *Ry. Co.*, 104 W. Va. 461, 140 S. E. 329. That case was where plaintiff had been allowed to get before the jury a statement made by him after the accident that he had been struck by a rail (a self-serving declaration) and has no application here. The instructions given the men was evidence of conduct, and not of conversation, and was pertinent to the issue of whether defendant had used due care, or whether there had been permission or invitation as charged in the declaration. A defendant in this class of cases may show that he has employed experienced and skilled persons and promulgated rules and instructions for the conduct of the business. The fact that defendant had instructed his foreman some years previous in that regard while on another job, was brought out by plaintiff on cross-examination.

A rough diagram was used by witness Terry to illustrate and make clearer his evidence as to the location of the quarry, the road, the tool house, the powder house, and where the bodies were found after the explosion. It was a rough sketch and not drawn according to scale. Its inspection by the jury is charged as reversible error. Upon objection, the judge said he would not let the sketch go before the jury, but that it could be used for purposes of illustration, being only approximately correct. The court made it clear to the jury that the sketch should be considered only for making the testimony of the witness clearer as to the approximate locations of the various objects spoken of in his testimony. It was not offered as independent proof of a fact to be established, but merely to explain and make clear to the jury the evidence of the witness, and its use for that purpose, so told to the jury, was not error. *Wilson* v. *Mcoy*, 86 W. Va. 103 114, 103 S. E. 42, and cases there cited; *Prok* v. *Ry. Co.*, 75 W. Va. 697, 84 S. E. 568.

Error is predicated on a remark of the judge in overruling on objection to the evidence of a witness to the effect that he

had warned the boys off the premises at the crusher, the remark being: "If I understand, the crusher was some few feet away." The undisputed evidence was that the distance between the crusher and the tool house was from 150 to 175 feet. In the face of this undisputed evidence of the distance, we cannot see prejudicial error, if error at all, in the judge's remark that if he understood it, the crusher was "some few feet away."

The remaining assignment of error is to giving and refusing instructions. Plaintiff's instructions telling the jury that if they believed that the tool house with the dynamite and detonator caps was maintained near a public road and that plaintiff's decedent and others used the road, and defendant was aware of the said use of the road when the explosion occurred, then defendant was liable, were refused, and properly so, for there is no basis for such instructions in the declaration. Evidence and instructions not responsive to the issues are properly denied. It is true that the exact location of the child at the time of the explosion is not known. He was found, still living, on the premises between the tool house and the public highway. There was no evidence tending to show he was in the highway at the time of the explosion. Plaintiff's other instructions were given, and told the jury that if defendant suffered or permitted the child to be, or loiter, about the premises or tool house containing the dynamite and caps, then it became defendant's duty to use due and proper care and caution commensurate with the presence of the dangerous material, and to take necessary measures to prevent him from loitering about the building, and if defendant failed to exercise the degree of care commensurate with the danger, then defendant was liable and they should find for plaintiff; and, further, that warning to the child would not, alone, exculpate defendant from liability. The court refused to give defendant's peremptory instruction, but gave other instructions telling the jury, in substance, that if they believed it was not customary for the child to be on the premises, and his presence there was not permitted or acquiesced in by defendant, and that under all the facts and circumstances, the jury believed that defendant had done all that a reasonably

prudent and careful person should have done "and had used that degree of care that a reasonable and prudent person would have used to prevent injury to any person who might be upon the premises at the time of the accident complained of," then they should find for defendant. Plaintiff contended that the child customarily visited and loitered about the premises, and defendant contended that he had been there but two or three times, and at each time warned away, and taken off the premises. Plaintiff contended that the child was an invitee or licensee by implication, and that due and proper care was not exercised to prevent injury; while defendant denied that he was an invitee or licensee, and asserted that he had used reasonable precaution to prevent injury. These issues of fact were raised by the pleadings and evidence, and were submitted to the jury in the instructions above set out.

Defendant offered and was refused instructions telling the jury that defendant was under no duty to keep the premises reasonably safe as to trespassers, and that no right of recovery existed unless defendant was guilty of such gross negligence as to amount to wanton or willful injury; and that if the child was on the premises without permission and contrary to warnings given, then there was no duty on defendant to keep the premises reasonably safe for him, and that they should find for defendant, even though they believed that the blacksmith and loader (Shires) had suffered him to come upon the premises.

Defendant's instruction No. 9 was given, which told the jury that "a trespasser within the meaning of other instructions given by the court (none were given) is one who goes upon the premises occupied by another without invitation or consent express or implied of the occupant of such premises or one who has no legal right to be upon said premises."

The quarry operation was in a rural community and the record does not show that anyone lived near thereto except plaintiff and her family. The detonations from the shooting of rock in the quarry, the drilling of holes in the rock for the use of dynamite, the consequent flying of rock in the air from the shots, the use of a powerful crusher reducing the large pieces of rock to small ones for use on the road, the black-

smith shop, the activity of the workmen and those trucking the finished product to the road, would quite naturally attract decedent to the premises. Defendant could reasonably anticipate that the operations would have that effect. It is quite evident that decedent was attracted there by childish curiosity. Defendant was aware of the attractiveness of his operations to children as well as to others, and had given instructions to all of his employees to keep them and others from the premises. We do not adhere to the attractive nuisance or turntable doctrine prevalent in some other jurisdictions. *Martino* v. *Rotondi,* 91 W. Va. 482, 113 S. E. 760. And we have said that ordinarily children are not exempt from the general rule that the owner of the premises owes no duty to trespassers except not to wantonly or willfully injure them; but this rule does not apply "where there is an exposed and unguarded danger known to the proprietor and where it is also known to the proprietor (a) that children are in the habit of resorting for play to his property, or at the place of danger or in its immediate vicinity, or (b) that children are actually present at the time and place of danger. In such situations, the proprietor must exercise reasonable care to avoid injuring children, and whether such case has been shown is generally a question of fact for jury determination." *Adams* v. *Gasoline Co.,* 109 W. Va. 631, 637, 156 S. E. 63. In that case, we stated the principle of law to be in the first point of the syllabus: "An owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated." The same humanitarian principle is exemplified in *Wellman* v. *Fordson Coal Co.,* 105 W. Va. 463, 143 S. E. 160; *Colebank* v. *Coal & Coke Co.,* 106 W. Va. 402, 145 S. E. 748. We said in these cases that the question of negligence, under all the facts and circumstances, was one for jury determination.

Even in those jurisdictions where the attractive nuisance doctrine prevails, it is quite generally held that the property owner is not an insurer of the safety of children, but that he must take reasonable precaution therefor. *Edginton* v. *Bur-*

*lington, etc., Ry. Co.* (1902), 116 Iowa 410, 57 L. R. A. 561; *Bonniwell* v. *Milwaukee, etc.*, (1921) 174 Wis. 1, 182 N. W. 468; *McMillin* v. *Bourbon Stock Yards Co.* (1918), 179 Ky. 140, L. R. A. 1918C 682, wherein the court said the duty of the owner "does not go to the extent of making the owner an insurer of the safety of trespassing children. It only requires him to take reasonable precautions for their safety, and among these precautions are the duty of warning and notice, as well as the duty, in some instances, of protecting by barriers, and especially are these last precautionary measures required where children are permitted, without objection, to go and play. But the owner need not keep gates that are on his enclosed premises continually locked, and need not build his fence so high that no person can climb over it; nor is he required to have servants continually on the lookout for trespassing children. He need only exercise reasonable care considering all of the surrounding conditions and circumstances, to prevent trespassing children from being hurt by the dangerous things he may have about his premises." The decisions say that the care to be used, is the care of an ordinarily prudent and cautious person under the circumstances. Reasonable care and negligence are relative terms, and the degree of care required must be commensurate with the dangers to be avoided. *Koontz* v. *Whitney,* 109 W. Va. 114, 153 S. E. 797; *Morrison* v. *Power Co.,* 75 W. Va. 608, 84 S. E. 506. Plaintiff charged that decedent was a licensee and based his recovery on that fact. A licensee is a person whose presence is not invited, but tolerated only, and generally the duty of the owner of property to an invitee is to exercise reasonable care to keep the premises in safe condition. In the annotation to *United Zinz & Chemical Co.* v. *Britt,* 258 U. S. 268, 66 L. Ed. 615, written by Mr. Justice Holmes, (and *Martino* v. *Rotandi,* 91 W. Va. 482) found in 36 A. L. R. 28, which is full and exhaustive, the annotator sums up the result of the decisions respecting injuries to children who are trespassers, invitees or licensees as follows: "To make out a case against the person responsible for the danger, there must appear: First. That the injured child was too young to understand and void the danger. Second. That there was

reason to anticipate the presence of some attraction on the premises, or because the danger was in some place where children had a right to be. Third. That there was a strong likelihood of accident. Fourth. That the danger was one other than those ordinarily encountered. Fifth. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.'' This discussion of the liability of the land owner and the principles governing the same leads us to consideration of the quoted instruction given by defendant defining a trespasser. While abstract instructions are discouraged, they are not, as a general rule, cause for reversal unless it can be seen that the jury has been mislead thereby. *Frank* v. *Traction Co.*, 75 W. Va. 364, 83 S. E. 1009. The test of reversible error is whether the instruction was misleading. No duty is owing by a land owner to a trespasser except not to wantonly or willfully injure him, but children of tender years are not subject to that rule, as above discussed; and the jury may have come to the conclusion from this instruction that they should treat the child as a trespasser pure and simple. If not, why should a trespasser be defined to them? The remark of the court in refusing evidence of travel on the nearby road indicated that trespassing might be interposed as a defense, although plaintiff was proceeding on the theory that the child was a licensee, and not a trespasser. A jury is always quick to catch and remember any remark of the court, and when this instruction was given to them, defining a trespasser as used in other instructions (not other instructions as to trespassing having been given), the jury may have considered the child a trespasser and for that reason alone considered that defendant had not wantonly or willfully caused his death. We cannot say that the jury did not give it this effect. They may have misapplied it, and for this error, we are constrained to reverse the judgment, set aside the verdict, and direct a new trial.

*Judgment reversed; Verdict set aside; New trial awarded.*