WEST VIRGINIA DEPARTMENT OF HIGHWAYS

*v.*

DELTA CONCRETE CO., *etc., et al.*

(No. 14664)

Decided July 15, 1980.

*McCamic & McCamic and Jeremy C. McCamic,* for Delta Concrete Co.

*Joel, Petroplus & Thompson, David J. Joel and William G. Petroplus,* for West Virginia Dept. of Hwys.

PER CURIAM:

The appellant in this eminent domain proceeding, Delta Concrete Company, was awarded $117,755 for land condemned by the West Virginia Department of Highways [Department]. On appeal, Delta contends that the Circuit Court of Ohio County erred in refusing the admission during trial of photographs and other evidence which would have shown that the condemned property was suitable for a river dock facility. Delta also contends that the jury's verdict was contrary to the weight of the evidence adduced.

We conclude that the rejected evidence was merely cumulative and that the jury's verdict was supported by the evidence, and affirm the decision of the Circuit Court.

The City of Wheeling owned a parcel of land known as the Hubbard Playground which was located in the path of the Department's proposed Project No. QI 470-1(11)0. By contract with the Department and by municipal ordinance, the City agreed to transfer the land to the Department in exchange for another parcel suitable for a playground. To provide the City with an appropriate tract, the Department instituted this proceeding against Delta to condemn a portion of a parcel owned by Delta adjacent to the Ohio River.[1]

The question of the value of the condemned property was tried before a jury on October 30, 1978. Prior to trial, the Department deposited with the Court $67,000, the estimated value of the take. The appellant prayed for compensation in the amount of $1,470,000, and its expert set the value at $1,325,000. Experts for the State estimated that the value was between $76,750 and

---

[1] While the Delta parcel was not within the bounds of Project No. QI 470-1 (11) 0 and was not condemned directly for highway purposes, Delta did not challenge the authority of the Department to condemn its property. Therefore, the issue of whether the Department had the authority to condemn the particular tract is not before us, and we do not address it.

$86,300. On October 31, 1978, the jury returned a verdict in the amount of $117,755.

During the trial, the landowner attempted to establish that the highest and best use of the land was as a coal loading dock and facility. Several of appellant's assignments of error go to the trial court's rulings on evidentiary matters. Two of appellant's assignments relate to the court's rejection of evidence which the appellant attempted to introduce showing that a rail siding entered the property at the time the Department took possession of the tract. Another of the appellant's assignments is that the trial court refused to admit into evidence a photograph of a coal loading dock which had not been installed on the premises, but which the appellant had proposed to install.

The appellant attempted to admit into evidence, as Defendant's Exhibit 1, the ordinance and contract between the City and the Department. Included in the exhibit were "Plans for Construction of Hubbard Playground Relocation." Page S-2 of those plans showed a railroad siding leading into appellant's property. The appellant also sought to introduce a certain aerial photograph taken of the property in 1959 which purported to show features of the property, including the siding, on June 11, 1976, the date of the take, but the court rejected the offer.

The trial court apparently rejected the plans when the landowner's engineer testified that he had not prepared them, but rather asserted that they were State highway plans and that he was familiar with them. The photograph of the property was refused on the basis that it did not accurately portray the property in view of the fact that it was taken in 1959, notwithstanding the fact that it had been presented at the Commissioner's hearing by joint agreement of the parties. The photograph of a coal loading dock was refused since it was not actually installed at the time the property was condemned. In view of our ultimate disposition of the case, we need not make a determination of whether these rulings were

erroneous, since this evidence was merely cumulative to other evidence that was admitted.

The evidence at trial demonstrates that the landowner did present evidence through its witnesses Messrs. Schellhase, Seabright and Criss, that there was a railroad siding on the property at the time the State condemned the property. The State did not contest this fact.

It is also clear from the record that the landowner's entire theory of value was that the property's highest and best use was as a coal loading facility. Its expert witness, Mr. Criss, testified extensively as to this fact. It was based upon this theory that the landowner's value of $1,325,000 was placed before the jury.

Ordinarily, photographs and plans are admissible if they accurately depict relevant facts. *Thrasher v. Amere Gas Utilities Co.*, 138 W.Va. 166, 75 S.E.2d 376 (1953); *Wiseman v. Terry*, 111 W.Va. 620, 163 S.E. 425 (1932). In the present case, even if the photographs and plan were admissible, we do not deem them to be critical pieces of evidence, since the facts which they depicted had already been established by uncontradicted evidence from several witnesses. To this extent, they were cumulative, and their exclusion does not constitute reversible error. Syllabus Point 3, *Elswick v. Charleston Transit Co.*, 128 W.Va. 241, 36 S.E.2d 419 (1945); *see Edunston v. Wilson*, 146 W.Va. 511, 120 S.E.2d 491, 503 (1961).

The landowner also contends that the trial court erred when it refused to admit into evidence Defendants' Exhibit 1, which was a copy of the agreement between the City and the Department relating to the exchange of the City's Hubbard Playground for condemnation of the landowner's property. The landowner contends that at the time of the jury's view, a City playground existed on the condemned property, which may have caused the jury to infer that the landowner had previously been paid for the condemned parcel by the City.

The difficulty with this argument is that the record fails to disclose that appellant made any assignment of

this point by way of objection at the trial. As we have previously stated, Appellant's Exhibit 1 was not admitted because the witness was not personally familiar with the plans. The record discloses that the purpose of the testimony surrounding Exhibit 1 was to demonstrate the existence of the railroad siding. At no time did counsel for appellant indicate to the court that Exhibit 1 was also necessary to show the agreement between the City and the Department in relation to the playground in order to clear up a misunderstanding that the landowner might be obtaining double compensation.

In fact, a careful reading of the record discloses that at no time, from the beginning of the trial to its conclusion with the jury verdict, did appellant's counsel request that the jury be given some instruction or information in regard to the playground problem in order to alleviate any possible confusion the jury might have as to double compensation. From appellant's opening statement onward, the case was tried on the premise that the State was taking the property for road purposes and had the right to take the property.[2] We have rather consistently held that in the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken. *Boury v. Hamm*, 156 W.Va. 44, 190 S.E.2d 13 (1972); *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971); *Bank of Wheel-*

---

[2] During appellant's opening statement to the jury, these remarks were made:

"[I]t [the State] has determined that present and reasonably anticipated future traffic conditions have rendered the hereinafter mentioned controlled access facility necessary for public use as a part of the highway system of the State of West Virginia, which it has designated as relocated U. S. 470. That in order to construct and maintain said public highway in the areas designated by Petitioner, it will be necessary to pass over, upon and through the lands owned by the Defendant, Delta Concrete Company. That is the purposes stated in the Amended Complaint for the taking. Now, in this type of case, as the Judge has pointed out, the condemnor has a right to go on that property and take it. And the condemnor did that. There is no question about that."

*ing v. Morris Plan Bank & Trust Co.*, 155 W.Va. 245, 183 S.E.2d 692 (1971).

Appellant's last contention is that the verdict of the jury is contrary to the weight of the evidence. There is little question that there was a considerable disparity between the State's theory of value of between $76,000 and $86,000, and the landowner's theory of $1,325,000. The landowner's witnesses were given a full opportunity to develop in detail their value approach. The jury viewed the premises. Its verdict of $117,755 is above the amount testified by the State's expert witnesses, and we cannot say it is contrary to the weight of the evidence nor clearly wrong. Therefore, the jury's resolution of the conflicting evidence must be accepted, as we have stated in *Levine v. Headlee*, 148 W.Va. 323, 134 S.E.2d 892 (1964):

> "A jury verdict based on conflicting testimony, involving the credibility of witnesses and approved by the trial court, will not be set aside by this Court on the ground that it is contrary to the evidence unless in that respect it is clearly wrong."

*See Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975).

For the reasons stated, the judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*