WILLIE McGOWAN v. THE IVANHOE MANUFACTURING COMPANY.

(Filed 7 October, 1914.)

1. **Master and Servant—Cotton Mills—Employment of Children—Negligence —Causal Connection—Interpretation of Statutes.**

Revisal, sec. 1981 (a), makes it unlawful for any factory or manufacturing plant to work or employ a child therein under 12 years of age, and a willful violation of this section on the part of a mill owner, superintendent, or other person acting in behalf of the establishment, is made a misdemeanor by Revisal, sec. 3362; and it is held that a violation of this statute by reason of which an injury was caused to such child, unlawfully employed, constitutes an actionable wrong, and whenever the injury has arisen from placing the child at work in the mill and subjecting it to the risks naturally incident to such work or environment, it is actionable negligence for which a recovery may be had without the necessity of showing that the child received the injury when engaged in the very work he was employed to do or by reason of it.

2. **Same—Knowledge Implied.**

Where with the knowledge of the owners of a cotton mill, or its superintendent or other agents representing the owner or management of the plant, a child under 12 years of age is permitted to work around the mill, though not on its regular pay roll, or has so continuously worked there that the management or its representatives should have observed that he was so engaged, it is in violation of our statute, Revisal, sec. 1981 (a), prohibiting the working or employment of children at such places under 12 years of age.

3. **Same—Trials—Evidences—Acts of Vice Principal—Scope of Employment.**

In this case a child under 12 years of age was injured in the lapper room of the defendant cotton mill. There was evidence tending to show that the plaintiff was not on the pay roll of the mill, but had for a length of time been continuously at work around the mill, with the knowledge and approval of the superintendent and foreman; that the foreman of the lapper room, when plaintiff was passing through, ordered and forced him "to throw cotton from the lapper while the machine was in motion," which resulted in the injury complained of. *Held,* evidence sufficient to show that the act of the foreman in causing the said injury was within the scope of his employment, and one for which the defendant is responsible, whether at common law or under the provisions of our statute. Revisal, sec. 1981 (a).

APPEAL by plaintiff from *Peebles, J.,* at April Term, 1914, of JOHN-STON.

Civil action to recover damages for injury done plaintiff while wrongfully being worked at defendant's cotton mill; plaintiff, at the time of the occurrence, being a minor between 8 and 9 years of age.

It was admitted in the pleadings that Mr. Gordon was superintendent and Mr. Holt was foreman and boss of defendant mill at the time, and as such had full "charge, management, control, and supervision, etc., of the lapper."

The plaintiff, a witness in his own behalf, testified, on his examination in chief, as follows: "I was living in Johnston County in 1911, and am going on 12 years old. I worked for the Ivanhoe Mills under Mr. Holt and Mr. Gordon, and I worked as long as I stayed there, twelve months; I did not work every week, or day, during that time; I just went there and they would tell me to go and do so and so. Mr. Gordon paid me a quarter for work and Mr. Holt promised me 20 cents, but never gave it to me. At the time I was injured I started through the lap room, and John Johnston told me to throw the cotton back over the lap pin, and I said, 'I shan't do it,' and he grabbed me by the wrist and forced me to throw the cotton from the lap pins while the machine was in motion, and my hand was caught between the rollers and hurt. My hand was hurt while in the machine. The work I did, I took bobbins out of a quill box and put them into doff boxes under the instructions of Mr. Holt and Mr. Gordon. I done this work in their presence when they were looking at me. They saw me in the mill at work just about every day. I run the waste machine. Mr. Holt instructed me to do it and saw me do it. Also, I went to the store for Mr. Holt to get some soap. I was hurt about 12 o'clock. Dr. Rose attended me. I lost one finger. The doctor attended me about two weeks."

On cross-examination, he testified: "At the time I was hurt my father and mother both were working in the mill. The day I was hurt my father was working in the speeder room. I was hurt in the lapper room. The lapper room and the speeder room are a good distance apart, and there is a door that goes from the speeder room; there is also a side door. Just before I was hurt I came in the door out of the speeder room into the lapper room. I had been in the lapper room before that morning. No one had run me out of the lapper room. When I went in the lapper room Mr. Johnson was weaving the loop about 2 feet from the machine where I was hurt. When he grabbed me, I was in front of the lapper, going towards the side door. He took my hands by the wrist and put them in the lapper and stopped the machine. Just before he caught me, Johnson said: 'Throw the cotton over the lap pin,' and I said, 'I shan't do it'; then he grabbed me by the hands and put them in the roller. Mr. Gordon paid me something for working around there. Mr. Holt did not pay me anything. My father and mother were both working at the mill, and there was no one left at home. I run the waste machine twice. Mr. Holt promised to pay me 20 cents for both times."

Redirect, as follows: "Mr. Holt was foreman and boss of the lapper room; Mr. Johnson run the lapper."

There was other testimony tending to support the plaintiff's evidence as to his working about the mill in the presence of the superintendent and foreman.

167—13

Among other witnesses, Enoch Brewer, on his examination in chief, testified: "Prior to December, 1911, I worked at the Ivanhoe Mills and saw Willie McGowan working in this mill. I was an extra hand, doing just one thing and another, and I saw Willie McGowan taking up bobbins and putting them in boxes. I saw him do this in the presence of Mr. Gordon and Holt. I never heard either Gordon or Holt order him out of the mill. I saw this boy putting on bobbins every day he was there. I do not know how long I was there. I have seen Mr. Gordon pick him up and put him in the bobbin box. Mr. Holt and Mr. Gordon had charge of the lapper room. Gordon was superintendent and John Johnson had charge of the machines in the lapper room."

At the close of plaintiff's evidence, on motion, there was judgment of nonsuit, and plaintiff excepted and appealed.

*F. H. Brooks and Langston, Allen & Taylor for plaintiff.*
*Abell & Ward for defendant.*

Hoke, J. Our statute, Rev., sec. 1981 (a), provides that, from and after 1 January, 1908, no child under 12 years of age shall be employed or *worked* in any factory or manufacturing establishment within this State, and, by section 3362, the willful violation of the former section, on the part of mill owner, superintendent, or other person acting in behalf of the establishment, is made a misdemeanor, except in oyster canning and packing manufactories where the work is paid for by the gallon or bushel.

In several decisions on this subject, notably *Starnes v. Mfg. Co.,* 147 N. C., 556, and *Leathers v. Tobacco Co.,* 144 N. C., 330, it is held that a violation of the statute causing injury to the minor constitutes an actionable wrong, and that it is not necessary to establish a causal connection that the child should have received the injury when engaged in the very work he was employed to do or by reason of it, but it will be held to exist whenever the injury may fairly be said to arise from placing a child of immature years at work in a mill and subjecting it to the risks naturally incident to such work or environment. Speaking to the question in *Starnes' case, Associate Justice Brown,* delivering the opinion, said: "It is true that the plaintiff was not engaged in performing his duties in the spinning room, and had gone to the lower floor, where the carding machines were, and got his hand caught in one and badly cut. Under such circumstances there are respectable courts which hold that the injury is not the proximate result of a violation of the statute, because not received in performing the work the child was assigned to do, and that therefore the employer is not liable.

We are not impressed with the persuasive authority of those precedents and are not inclined to follow them. To do so would, in our

opinion, unduly restrict the liability of the employer and would be contrary to the evident intention of the Legislature.

The act was designed not only to protect the health, but the safety, of children of tender age from the indiscretion and carelessness characteristic of immature years. One who knowingly and willfully violates its provisions is not only guilty of an indictable offense, but he commits a tort upon the rights of the child, and should be judged as a culpable wrongdoer and not as one guilty of mere negligence. The injury done the child is a willful wrong and does not flow from the negligent performance of a lawful act. The distinction between the two is well stated by *Mr. Justice Walker* in *Drum v. Miller,* 135 N. C., 208.

We think that the breach of the statute constitutes actionable negligence wherever it is shown that the injuries were sustained as a consequence of the wrongful employment of the child in the factory, in violation of the law. In this case we think there is a direct causal connection between the unlawful employment of the plaintiff and the injuries sustained by him. By employing this boy of 10 years in violation of the law, the defendant exposed him to perils in its service which, though open to observation, he by reason of his youth and inexperience could not fully understand and appreciate. "Such cases," says *Judge Cooley,* "must frequently occur in the employment of infants."

In that case the duties of the minor were to sweep out the spinning room and make bands, but, on the day in question, he went to another part of the factory, as he had frequently done before, to see his father, who was running a carding machine. When the father was 20 steps distant, tending another machine, the child attempted to pick a pad of cotton off the card, and got his hand caught and injured in the cylinder of one of the machines, and it was held: "There was direct causal connection between the unlawful employment of the child and the injuries sustained by him, for which the defendant is liable, occasioned by his being employed on the premises where he was subject, through childish carelessness incident to his years, to tamper with dangerous machinery."

In the cases referred to, the fact of the minor being a regular employee was unquestioned, while in this present case it may become a matter of dispute, but the language of the act is that no child under 12 shall be employed or *worked* in any factory, etc.; and if this child, though not on the regular pay roll, was permitted to work at the mill to the knowledge of the owner, superintendent, or other agent, fairly representative of the management, or if he worked there so openly and continuously that the management should have observed and noted his occupation and conduct, his case would come within the terms and meaning of the law. According to the facts in evidence as they now appear, this plaintiff had for a length of time been continuously at work

in the mill, with the knowledge and approval of the superintendent and the foreman; one witness saying he had observed this boy putting on bobbins every day he was there. The plaintiff himself testified that Gordon, the superintendent, had himself paid him for work at the mill. In addition, plaintiff testifies that on this occasion, Jack Johnson, "who had charge of the machinery in the lapper room" (see evidence of Lonnie Carlisle, Record, p. 13), ordered plaintiff to do some work there, and when he refused, he grabbed plaintiff and forced him to do the work.

It is argued for defendant, as we understand his position, that this was a wanton act on the part of Johnson, for which the company can, in no sense, be made responsible, and an excerpt from the opinion in *Starnes' case* is relied upon: "That although defendant had violated the statute in employing a child of tender years, the defendant, was not liable for an injury caused by the willful and malicious act of a workman in knocking him against dangerous machinery." The entire portion of the opinion on this point is as follows: "We do not mean to hold that the employer violating the act would be liable in damages for every fatality that might befall the child while in its factory. For instance, had the plaintiff died of heart disease, or from a stroke of paralysis, or been seriously injured by the willful and malicious act of a workman in knocking him against a machine, or injured from some cause wholly disconnected from the unlawful employment, the defendant could not be held liable in damages simply on account of the employment in violation of the statute." .

It will thus be seen that the writer was referring to the willful and wanton act of some ordinary employee who, of his own malicious purpose, might have assaulted the child, and the suggestion gives no support to defendant's position on the facts of the present appeal. As the matter now stands, there are facts in evidence which permit the inference that Johnson was in charge of the machinery of the lapper room and, in the course and scope of his employment, ordered the boy to do the work, and, when he refused, compelled him to do it, and tending to fix responsibility for this injury on the defendant, either with or without the provisions of the statute, under the principles presented in *Jackson v. Telegraph Co.,* 139 N. C., 347.

There was error in entering judgment of nonsuit, and the same must be set aside.

New trial.