## SILVER KING COALITION MINES CO. v. LINDSETH.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1927.

No. 7606.

1. **Negligence** ⊕⇒23(1)—**Boy injured by elevator held not entitled to recover on ground of negligent maintenance of attractive nuisance.**

Boy, injured by moving elevator, started by himself or a boy companion, in building of mining company using elevator only to lift supplies to fourth floor for transportation to mine by aerial tramway, *held* not entitled to recover from owner on ground of negligent maintenance of attractive nuisance.

2. **Master and servant** ⊕⇒95—**Boys sometimes voluntarily assisting, and performing personal services for employee, held not employed or permitted to work, contrary to law (Comp. Laws Utah 1917, § 1860).**

Boys sometimes voluntarily assisting employee to remove supplies from elevator in building they frequented while playing "hookey," and performing personal services for him, *held* not employed, nor suffered or permitted to work, in *violation* of Child Labor Statute (Comp. Laws Utah 1917, § 1860), so as to authorize recovery from employer for injury to one of them by movement of elevator.

3. **Negligence** ⊕⇒24—**Employer held not liable for injury to boy in absence of evidence of employee's knowledge of boy's use of elevator.**

Mining company, using fourth floor of storage building as terminus for aerial tramway from mine, *held* not liable for injury to one of two boys entering elevator from ground floor, in absence of evidence that employee in charge of tramway knew of their use of elevator, or of such acts in past as would lead him to expect repetition thereof.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by Anton C. Lindseth, generally known as Anton C. Martin, a minor, against the Silver King Coalition Mines Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

A. C. Ellis, Jr., and R. J. Hogan, both of Salt Lake City, Utah (Dickson, Ellis, Parsons & Adamson, of Salt Lake City, Utah, on the brief), for plaintiff in error.

Mahlon E. Wilson, of Salt Lake City, Utah (Albert R. Barnes and Edward Moran, both of Salt Lake City, Utah, on the brief), for defendant in error.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiff in error is a Nevada corporation doing a mining business in the state of Utah. In connection with its mining operations it owns and operates what is known as a Terminal Building, in which is installed one of the terminals of an aerial tramway extending a distance of 1¼ miles from the mine of plaintiff in error to said Terminal Building, which is located at the outskirts of Park City, Utah, and near the railroad stations of the Denver & Rio Grande Western Railroad Company and the Union Pacific Railway Company. This aerial tramway is used to bring, in buckets suspended from wires or cables the ore from the mine and to discharge the same into bins located on the main floor of the Terminal Building. It is also used for the purpose of transporting from the Terminal Building to the mine milk, hay, groceries, coal, and mine supplies. The groceries, milk, and supplies are placed in the buckets returning to the mine; these buckets are automatically disengaged from the wires. The operation of this tramway requires the close attention and supervision of an employee stationed on the fourth floor of the Terminal Building, upon which floor is located the terminus of the tramway. The intermediate floors are used for storage purposes. To enable the hay, groceries, milk, and supplies to reach the fourth floor of the Terminal Building, for transportation to the mine, a freight elevator is installed in the building, running from the main or ground floor to the fourth floor. This elevator is used during the daytime by employees of the defendant only for the purpose stated. It is actuated by an electric motor and is operated by two wire cables. When one of these cables is pulled downward the elevator will go in one direction, and when the other is pulled downward it will go in the opposite direction. There is a third cable by which the elevator can be stopped.

On the 4th day of April, 1923, the defendant in error was a lad between 12 and 13 years old. For two weeks prior thereto, he and a school mate named Bircumshaw, of about the same age, had been playing "hookey" from school; in order to conceal this from their parents, teachers, and others, they frequented this Terminal Building, situated, as it was, at a point remote from the business and residence part of the town. Upon the extent to which their presence at different times was known to the superintendent and employees of plaintiff in error, and the extent to which that presence had been indulged, the evidence is conflicting; but this phase of the controversy is not deemed to have any decisive effect upon the decision of the case as presented to us.

These boys, according to their testimony, had been in the habit during the two weeks in question of entering the Terminal Building and going sometimes to the third and sometimes to the fourth floor. They say they generally used the elevator which could be impelled from either floor. The only man on the fourth floor whom they ever saw was one George P. Gidley, a subordinate employee of plaintiff in error, who was in charge of the aerial tramway. The boys say that sometimes, while on the fourth floor, they assisted him in removing the milk cans, groceries, etc., from the elevator. Neither of them testifies that Gidley ever saw them use the elevator. They do say specifically that from his station he could not see the elevator, and that the tramway, when in operation, made so much noise that he could not have heard the moving of the elevator. Defendant in error testifies that on a few occasions he had done some trifling personal services for Gidley in the way of procuring tobacco and taking shoes for repair. This Gidley denies. Some time in the afternoon of April 4, 1923, aforesaid, the boys came to the Terminal Building and entered the elevator. It does not appear clearly from the testimony which of the two set the elevator in motion. The Bircumshaw boy grabbed the cap of defendant in error; the latter in attempting to recover it, lost his balance as the elevator passed from the first to the second floor; his leg was caught, and he sustained injuries, from which amputation resulted. Suit for damages in the

District Court for the District of Utah resulted in a verdict for defendant in error in the sum of $14,750.

[1] The petition urged two grounds of recovery. The first, that of the negligent maintenance of an attractive nuisance, was properly rejected by the court upon the authority of United Zinc Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. The second ground urged was a violation of section 1860, Compiled Laws of Utah 1917, the pertinent part of which is in the following language: "No child under the age of sixteen years shall be employed, permitted, or suffered to work in any capacity * * * in the running or management of elevators, lifts, or hoisting machines."

The contention is that plaintiff in error negligently, carelessly, and recklessly, and in violation of the state statute, permitted and engaged the said Bircumshaw to operate and run the elevator up and down in the building, and invited, requested, and permitted defendant in error to ride thereon while it was being so operated by Bircumshaw; that Bircumshaw, being under the age of 16 years, was prohibited by statute from being so employed. At the close of all the testimony plaintiff in error moved for a directed verdict, which motion was denied. But one ground of negligence was submitted to the jury and that was the alleged violation of the Child Labor Law above set forth. In the course of its charge the court said:

"Now, this defendant, gentlemen, is a corporation, and as such it has a legal entity, but no physical parts or individual personality. It must act, of course, through human beings; and I charge you in this connection as a matter of law that under the evidence in this case Mr. Gidley had charge of the operation of this elevator to that extent that the defendant company would be chargeable with his acts and omissions with respect to its operation. In other words, the acts or omissions, the permission or the sufferance, of Mr. Gidley with respect to the operation of that machine by these boys were the acts and omissions, the permission and sufferance, of the defendant company. So that, gentlemen, the question for your determination is: Did Mr. Gidley permit or suffer the Bircumshaw boy to operate this machine upon the occasion when the plaintiff was injured, within the meaning of the definition of these words as I have already given them to you?

"If you shall not find by a preponder-ance of the evidence that he did permit and suffer the Bircumshaw boy to operate the machine upon that occasion, then it becomes your duty to find for the defendant, no cause of action, because by that finding you would reach the conclusion that the defendant had not been negligent in this case. If, on the other hand, you find that Mr. Gidley permitted and suffered the Bircumshaw boy to operate this machine upon the occasion in question, by a preponderance of the evidence, and that the plaintiff was injured as a result of that operation, then your verdict should be for the plaintiff, unless, gentlemen, you shall find that the plaintiff himself was guilty of what is called contributory negligence."

[2] To these features of the charge counsel for plaintiff in error preserved appropriate exceptions. It will be noted that the ground of recovery alleged upon which defendant in error relied, and which the court entertained, was a violation of the Child Labor Statute, and not common-law negligence. In our judgment, the statute in question has no application to the case. These boys were not employed, nor suffered nor permitted to work, within the purview of that legislation. What they did about the building formed a part of their voluntary recreation, and in no sense created the relationship of employer and employee, within the letter and spirit of this statute, between defendant corporation and themselves. What they did for Gidley, if anything, was personal to him, and not within the scope of his employment.

[3] Furthermore, passing by the capacity of Gidley to bind his company, there is no substantial evidence, if any at all, that Gidley had any knowledge whatever of their use of the elevator. He was stationed where he could not see the elevator, and neither boy testifies that he ever saw them using the elevator. At the time defendant in error was hurt, the boys entered the elevator from the ground floor. Of course, Gidley could not have known of it, being busily engaged upon the fourth floor. The court charged him with implied knowledge, because of his assumed knowledge of such acts in the past which would lead him to expect that those acts would be repeated in the future. The record does not justify such an assumption.

The motion for a directed verdict should have been sustained. The judgment below is reversed, and the case remanded for a new trial, in accordance with the views expressed in this opinion.

It is so ordered.