23301.   SPIVEY *v.* LOVETT & BRINSON *et al.*

DECIDED JANUARY 24, 1934.

*C. C. Crockett,* for plaintiff. *Hatcher & Hatcher,* for defendants.

JENKINS, P. J.   1.   Although "one into whose service another volunteers without his assent, express or implied, is not under the duties of a master toward a servant or required to anticipate or discover the peril of such volunteer, but is only bound, relatively to such volunteer, to use due care not to injure him after notice

of his peril," and where the plaintiff is such a mere volunteer, his "infancy can not change the relations of the parties or supply the place of negligence on the part of the defendant" (*Atlanta & West Point R. Co.* v. *West,* 121 *Ga.* 641, 49 S. E. 711, 67 L. R. A. 701, 104 Am. St. R. 179), yet "where a person is employed and paid by a servant as a temporary substitute, with the express or implied knowledge of the master, or with a subsequent ratification by the latter, the person employed is entitled to the same protection against injury while engaged in the master's work as the regular servant for whom he is substituting, even though he may not be entitled to recover wages from the master." *Payne* v. *Rivers,* 28 *Ga. App.* 28 (3) (110 S. E. 45). Under the allegations in the first count of the petition, the sixteen-year-old plaintiff (who sues by his father as next friend), although not compensated or manumitted by the father, took his place as his temporary substitute in work on which the father was engaged for the defendants, with both the express and implied consent and knowledge of the defendants, and therefore the rights and duties of the parties were the same as in a case of master and servant.

2. The petition seeks the recovery by the minor of damages for pain and suffering and for loss in earning power after the time of his majority, and is not a claim by the father for loss of services. Hence, any negligence by the father "was not imputable to his son, and therefore could not be pleaded as a defense in [this] action by the son to recover for personal injuries he had sustained;" although in an action for the father's damages, any negligence of the father causing or contributing to the injury would be matter of defense. *Hooper* v. *So. Ry. Co.,* 112 *Ga.* 96, 99 (37 S. E. 165). It is alleged that "the danger of the collapse of this floor," which caused the injury, "was especially pointed out by [the father], an employee of the defendants, but the defendants insisted that the structure would hold, and directed that the work go forward." It is not stated that this warning and knowledge by the father were known to the boy before the injury. The boy therefore would not be bound thereby, although even if he stood in the place of the father, or if the father's knowledge were imputable to him, the rules in *Evans* v. *Central of Ga. Ry. Co.,* 36 *Ga. App.* 58 (2, 3), 60 (135 S. E. 760), might be applicable, that, "where a servant with knowledge of a dangerous situation or instrumentality proceeds

with the performance of his duties for a reasonable time, relying upon a promise by the master to rectify such condition, he will not be held to have assumed the risk of injury from such dangerous situation or instrumentality, unless it should appear that the danger was so patent that no person of ordinary prudence would in the meantime carry on the work under the then surrounding conditions and circumstances," and that "whether the servant was guilty of contributory negligence in continuing his work for a reasonable time, pending the rectification of such dangerous condition, and while relying upon such promise by the master, is ordinarily a question for the jury, to be determined from the evidence as to the obvious and serious character of the defect."

3. "Under the law the servant or employee is not required to make any special inspection to see the condition of the place furnished to him, but if, by exercising ordinary care, he can discover the condition of it, it is his duty to do so." *Payne* v. *Rivers,* supra, and cit.

4. The first count of the petition, in setting forth the condition of the building and upper floor of the warehouse whose collapse caused the injuries, alleged actual knowledge by the defendants of the condition and their negligence in not supplying the plaintiff a safe place to work, without showing on the face of the petition equal knowledge or any negligence by the plaintiff, and thus was sufficient to raise questions determinable by a jury rather than by the court on demurrer. It was therefore error, as to this count, to sustain the general demurrer.

5. The second count, similar to the first, except that it is based upon the theory that, under the facts alleged, the plaintiff was an invitee on the premises by the express and implied consent of the defendants, instead of a person occupying the status of a servant, was also good against the general demurrer.

6. Since the petition was divided into two separate counts, one based upon the theory of master and servant, and the other of an invitee, there is no duplicity or improper joinder of the alleged causes of action, both growing out of the same facts and injury. This ground of special demurrer was therefore without merit.

7. Both counts allege that a part of the physical injury is permanent, but that the plaintiff "does not know just what is the nature of his permanent injury, but only knows its effects upon

him, for that he is easily exhausted and can not perform much physical labor and his health has all the appearances of being permanently impaired, whereas prior to said accident he was strong and robust and able to do the work of a matured man," on account of which, and physical suffering and mental pain, sustained because of the fall of timber across his back, the crushing and dislocation of his hips, the breaking of two ribs, the rupturing of a kidney, unconsciousness, and acute illness, in and immediately following the injury, he sues for $2000 damages. A special demurrer attacks these allegations as "no proper description of the nature of the permanent injuries." This ground was well taken, since the defendants were entitled to know more than the effects produced, in easy exhaustion and inability to perform as much labor as the plaintiff could do before the injury, as to what the plaintiff relied upon as the basis of his claim of permanent injuries. While the plaintiff might not be able to state with technical accuracy or completeness any resulting disease or abnormal physical conditions, which, existing at the time of suit, would justify his claim of permanent injuries, yet the petition lacks any statement as to the persisting or remaining conditions existing at that time to cause the effects claimed, the averments being limited to what happened at the time when he was hurt by the collapse of the floor, and to his ensuing "acute illness." This defect, however, unless the plaintiff fails to amend, would not authorize the dismissal of either count of the petition, even if it were a vital defect (which does not appear), since it relates to merely a part of the damages claimed. The judgment on the general demurrer being reversed, the case is remanded with direction that the plaintiff have reasonable opportunity to amend so as to remedy this deficiency, otherwise that the averments relating to damages for permanent injuries be stricken.

*Judgment reversed, with direction. Stephens and Sutton, JJ., concur.*