## 23478. HOWARD *v.* GEORGIA POWER COMPANY.

JENKINS, P. J. 1. While, as a general rule, allegations of fact are to be construed most strongly against the pleader, yet, in the absence of a special demurrer, where the facts alleged in a petition are such as would be proper and adequate to support one form of action, but inadequate, although appropriate, to another form of action, and where the petition is ambiguous to the extent that the pleader's intention is not clearly manifest as to which form of action is relied upon, the courts in such a case, ·in endeavoring to ascertain the plaintiff's intention, will prima facie presume that his purpose was to serve his best interest, and will construe the pleadings so as to uphold and not to defeat the action. *Stoddard* v. *Campbell,* 27 *Ga. App.* 363 (3) (108 S. E. 311), and cit.

2. A person employed and paid by a servant as a temporary substitute, with the express. or implied knowledge of the master or with a subsequent ratification by the latter, is entitled to the same protection against injury while engaged in the master's work as the regular servant, even though the substitute may not be entitled to recover wages from the master. *Spivey* v. *Lovett,* 48 *Ga. App.* 335 (172 S. E. 658); *Payne* v. *Rivers,* 28 *Ga. App.* 28 (3) (110 S. E. 45).

3. While the petition in this case is somewhat ambiguous in its averments as to whether the plaintiff's husband, for whose death from the explosion of a compressed-air sand-tank she sues, was working on the tank as an employee of the defendant, or merely as a temporary substitute for a regular servant of the defendant with its knowledge and consent, yet, the plaintiff having offered an amendment at the trial to accord with her evidence and clarify the ambiguity by clearly alleging that the deceased was working as such a substitute with the knowledge and consent of the defendant, and not as its employee, it was error to disallow this amendment. Even without such amendment, the pleadings being sufficient, under the rule stated above in paragraph 1, and the evidence sufficing to authorize a finding not only that the deceased was working as a temporary substitute for a regular servant of the defendant, but that the defendant had knowledge thereof and was directing his work through its foreman in charge of the sand car, which was being filled with sand from the tank causing the homicide, since the foreman, under the testimony of the regular servant, was *"the boss of the work there"* on which he and the deceased were engaged, and, under other testimony, was actually directing the deceased, a nonsuit was not proper upon the ground that the defendant owed no duty to the deceased other than that owed to a mere trespasser.

4. A nonsuit was not proper upon the ground that the evidence demanded a finding that the defendant was without negligence, and that the explosion of the sand tank was due to the deceased's own negligence in striking it with a hammer. While there was testimony indicating that a proper method of tightening the top of the tank was by means of screws, that it was not usual to tap the tank with a hammer, and that a co-worker with the deceased had told him just before the explosion to stop striking the tank, yet the testimony of the regular servant indicated that the foreman in charge of the sand car was "the boss of the work there," and as such was in charge of the deceased, and other witnesses testified that this foreman "told [the deceased] to get the hammer and hit it," and that "they usually take a hammer and tap that thing around there after they get it tight; they usually take the hammer and tap it, they have got two little knobs on it about that long, and they tap those knobs to tighten it." Accordingly, under this evidence, the undisputed evidence that the homicide resulted from the explosion of the tank, and an application of the principle of res ipsa loquitur (see *Palmer Brick Co.* v. *Chenall*, 119 *Ga.* 837, 47 S. E. 329; *Parrish* v. *Central of Ga. Ry. Co.*, 36 *Ga. App.* 133 (3), 137, 135 S. E. 762), in the absence of clear evidence to indicate the reason for the explosion, it can not be said as a matter of law that the defendant was free from fault, or that the deceased caused his death by his own negligence. Nor can it be said, from the evidence for the plaintiff preceding the nonsuit, that the deceased, in obeying the foreman's command to strike the tank with the hammer, was doing an act which was of itself so obviously dangerous that no person of ordinary prudence could be expected to perform it. See *Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 609, 616 (56 S. E. 839, 10 L. R. A. (N. S.) 772); *Hood* v. *Atlantic Steel Co.*, 29 *Ga. App.* 457 (2, 3) (115 S. E. 917). There was no testimony that the deceased had been previously warned by the master as to any danger of explosion of the tank or danger from striking it, or that he had independent knowledge of any danger. In view of the foreman's specific instructions, under which, according to some of the testimony, he was acting, it can not be said that his failure to follow the contrary instructions of a fellow worker would demand the inference that he was thus negligent, even if otherwise such failure would be pertinent to show negligence. It does not appear that the fellow worker had any superior knowledge as to the danger, or that, in merely telling the deceased to stop hitting the tank, he gave any suggestion or warning that a continuance of the hitting would involve danger.

5. The court did not err in excluding as immaterial the transcript of testimony and award of the Department of Industrial Relations on a previous application by the plaintiff to that department, denying compensation to her on the ground that the deceased was not an employee of the defendant; the purpose of the evidence being to show that the defendant, inconsistently with its position in this case, had in the previous proceeding insisted that the deceased was not its employee. This evidence was irrelevant. The record of the previous proceeding, while showing the award, fails to indicate what position was taken by the defendant or its counsel. But even if the former record showed that the

award was based upon the position taken by the defendant that the deceased was not an employee, there would be no inconsistency between such a position and the position now taken in this case that the defendant is not liable, whether the deceased was an employee or only a substitute for an employee.

6. The workmen's compensation act makes no provision for relief to a mere substitute for an employee receiving compensation from the employee and not from the employer, and there is no merit in the contention of the defendant that the trial court was without jurisdiction of the suit, because the sole remedy was an application for relief to the Department of Industrial Relations; the claim of the plaintiff being based on the theory, not that the deceased was an employee, but that he was a temporary substitute working for an employee with the knowledge and consent of the employer.

*Judgment reversed. Stephens and Sutton, JJ., concur.*

DECIDED MAY 22, 1934. REHEARING DENIED SEPTEMBER 19, 1934.

*Don K. Johnston, Ralph L. Wiggins,* for plaintiff.

*Colquitt, Parker, Troutman & Arkwright, Harllee Branch Jr.,* for defendant.

ON MOTION FOR REHEARING.

JENKINS, P. J. In contending that the trial court properly granted a nonsuit, the motion for rehearing raises two questions: (1) whether there was sufficient evidence to show express or implied knowledge by the defendant company that the deceased was working as a substitute for the regular employee whose place he took; and (2) whether there was sufficient evidence to show that the person in charge of and operating the sand-car, whose explosion caused the death, was foreman in charge of the work in which the deceased was engaged, and was a person whose knowledge and acts could render the company liable for the death of the deceased workman. In *Van Treeck* v. *Travelers Insurance Co.,* 157 *Ga.* 204 (3), 206 (121 S. E. 215), the Supreme Court held that, under section 23 of the workmen's compensation act, providing that written notice of an accident must be given to an employer, "unless it can be shown that the employer, his agent or representative, had knowledge of the accident, . . a foreman in charge of the special work in which the employee is engaged is an 'agent' or 'representative' within the meaning of said section." The man in charge of the employee in that case was "his immediate superior, the foreman in charge of his special work." Decisions un-

der other compensation acts were cited, to the effect that notice or knowledge of an accident by a foreman in charge of the employees in a room, or the foreman in charge of a department, under whom the employee worked and received orders and instructions, bound the employer. It is chiefly argued that the testimony strongly tended to show that a man by the name of Picklesheimer, or his son during his absence, was actually the foreman or boss in charge of the work in which the deceased was engaged; that Jones, who the plaintiff claimed was foreman, was merely in charge of or running the sand car while the deceased was working on the tank, from which the car was being loaded and the explosion of which caused the death; and that what Jones knew or told the deceased to do would not make the company liable. The motion stresses conflicts or weaknesses in the testimony of the two witnesses whose evidence formed the basis of the decision reversing the granting of a nonsuit. Will Walter testified: "The *foreman* told him to hit it, and then Milton told him he wouldn't hit it no more, and he hit it until it exploded, and it killed him. Mr. Carl Jones was the one who told him to hit it." Previously this witness had testified as to Jones, that "he operated the sand car; his duties in connection with the operation of the sand car were to load it up; he operated the loading *and things like that.*" Lloyd Ferguson, the regular employee in whose place the deceased was working, testified: "Mr. Jones was *the boss* of that work there." "Mr. Picklesheimer was *the boss* in charge of that work at the Fort Street barn. No, sir, he wasn't there that day. I don't know who was working in his place. Mr. Jack Picklesheimer, I reckon." "While it is true that 'when a witness testifies to facts incoherently or inconsistently, that circumstance goes to his credit, and if his testimony be very incoherent or inconsistent, it should be considered with great caution' by the jury (*Evans* v. *Lipscomb,* 31 *Ga.* 71 (2), this court is not authorized to hold as a matter of law that testimony of one not a party has no probative value merely because it is self-contradictory." *Sherman* v. *Stephens,* 30 *Ga. App.* 509 (4) (118 S. E. 567). Under this rule, the above-quoted evidence that Jones was not only "the foreman," with the duties of operating and loading the sand car "and things like that," but also "was the boss of the work there," regardless of inconsistency or weakness in the testimony of these witnesses, or contradiction by the testimony of other

witnesses, raised an issue for determination by the jury as to the authority of this alleged foreman. The granting of the nonsuit upon the contention that the evidence demanded a finding that he was not foreman in charge of the work was, therefore, erroneous.

*Rehearing denied.*