BILLY HARPER, *an infant, etc.,*

*v.*

R. L. COOK

(No. 10626)

Submitted April 27, 1954. Decided June 1, 1954.

*Fletcher W. Mann,* for plaintiff in error.

*Ezra H. Lilly,* for defendant in error.

GIVEN, PRESIDENT:

Plaintiff, Billy Harper, an infant, who sues by his next friend, instituted his action against defendant, R. L. Cook, doing business as Cook Lumber Company, in the Circuit Court of Boone County, for recovery of damages resulting from burns to his feet incurred· at a sawmill owned and operated by defendant. The jury returned a verdict for plaintiff in the amount of $7,500.00. The circuit court denied a motion to set aside the verdict, and entered judgment thereon. This Court granted a writ of error to the judgment.

Sometime in May, 1951, defendant moved his sawmill to a site on West Fork Creek. The mill was located in a small bottom along that creek, about three miles from the nearest residence, near Twilight. A road had been constructed previously by defendant from Twilight to the site, mainly through woodland. At the site, the road was located immediately to the left of the creek, looking up the creek. From forty to sixty feet from the road, farther to the left, was the mill, situated parallel to the road and occupying a space approximately thirty feet

in width. Still farther to the left, from seventy five to ninety feet from the mill, was a fire pit where a fire was kept burning continuously, to which mill waste was carried by a chain conveyor.

The father of plaintiff, Hansford Harper, was employed by defendant sometime in May, 1951, as night watchman at the mill. His duties, in his own language, were: "I was hired as night watchman; and the work I had to do was clean up the mill, up stairs and down stairs, and sweep it, and cleanup the slabs and sawdust. And I had to remove all of it from there and put it in the chain drag at the mill. Then after I got all that done up, and had it open up there, then I had to come down under the mill and clean out the saw dust under there, wheel it out, and take it out and put it on the fire, and look after the fire. Get it out from under the mill, clean up what slabs I got out of the slab drag, and if we got fouled up—a lot of times the drag would run over and throw lots of them out, and I would have to clean them up and put them into the fire."

On Saturday, September 22, 1951, Hansford Harper moved his family, including plaintiff, a boy a little less than twelve years of age, to one of the temporary dwellings constructed by defendant near the mill site for use by his employees. So far as the record indicates, plaintiff was never about the mill from the time its operation commenced until the family moved there. On the Tuesday, Wednesday and Thursday following the day on which the Hansford Harper family moved to the dwelling near the mill site, plaintiff attended school. The injury was suffered by plaintiff between twelve o'clock midnight of Thursday, September 27, 1951, and one o'clock A. M. of the following morning, about five days after the family had moved to the dwelling near the mill.

On September 27, 1951, about four o'clock P. M., the mill shut down for the day, and the father of plaintiff commenced work at about that time. Sometime later in the day plaintiff went to the mill where his father was working and, according to the evidence offered in behalf

of plaintiff, assisted his father in the work about the mill. The mother of plaintiff and his small brother also visited the mill later in the day and, according to the testimony of the mother, all assisted the father in his work about the mill. When the mother returned to her home in the evening, she attempted to have plaintiff return with her, but failed. She testified that the father "* * * told him to come back with me", but that plaintiff stayed with the father at the mill. Plaintiff testified: "Q. When she left, did you—what did you do when she left? A. They wanted me to go home, and I said no, there was no school on Friday, and she tried to get me to go home, and I wouldn't. They tried to get me to come home. Q. Your mother and father both tried to get you to go home? A. Yes, sir. Q. And you didn't want to go? A. No, sir. Q. And you just stayed on there? A. Yes, sir." Later in the night plaintiff went to sleep near the fire maintained by defendant at the mill for the purposes pointed out above and, in his own language, when he awakened "* * * I missed my father, and there was some noise there, and I was going to get him, and I went the wrong way". In going the wrong way he ran through the burning coals, which were apparently covered with ashes, and severely burned both feet.

There is some evidence tending to establish that plaintiff, on certain occasions other than the time of the injury, helped his father about the mill, and that defendant and certain of his employees knew of that fact. The father testified: "Q. Did your son ever help you do any of this work up there? Such as sweeping, and so on? A. Yes, sir. Q. Mr. Harper, do you remember when your son was injured up there at the mill? A. Yes, sir. Q. Had your son worked up there several evenings and nights before? A. He had. Q. What kind of work did he do while he was up there? A. Well, he would help me clean up there in the mill, the saw dust. Put it into the chain line, and what small pieces of slabs and stuff he could handle he would help take out, and whatever it was, if it was wheeling sawdust from under the mill, and going on the chain

drag from the mill to the fire, and he took out the slabs and whatever it was he could handle, and put them in the fire; and he helped me to do the work, the same kind of work as I done, except the big pieces where he couldn't handle." The father also testified to the effect that defendant knew plaintiff was doing such work and that on one occasion defendant came through the mill when the father, the mother, plaintiff and plaintiff's small brother were working, and that defendant remarked: "Well, we've got a gang of night watchmen here tonight". The mother testified: "Q. Would Billy be up there working too at the same time? A. Me and him and the other boy and my husband were at the mill a lot. We worked there a lot. Q. Just what kind of work did you do? A. Well, we would sweep and shovel the saw dust from all around the saws and where it fell, and we took and throwed it in the chain line. We would sweep it up and get it on the shovel, and Billy would carry it and throw it in the chain line." Plaintiff testified that a Mr. Miller, foreman at the mill, saw him working on one occasion and asked him, "Are you working hard?" and, after plaintiff had answered in the affirmative, remarked: "That's the way you can get it done".

There is no contention made on behalf of plaintiff that defendant or any representative actually hired plaintiff to work at the mill for any fixed compensation. No fixed duties were ever assigned to him by defendant or any representative. The most that can be gathered from the evidence, as it relates to such employment, is that plaintiff, with permission from his father, occasionally in the evenings would assist the father in the performance of certain work which had been assigned to the father, and that defendant, knowing such facts, "permitted" or "suffered" plaintiff to continue to assist the father. The testimony of defendant, and of the witnesses testifying in his behalf, denied any employment of plaintiff and denied any knowledge that plaintiff ever assisted his father at the mill. In view of the verdict, we are bound to view the evidence in the light most strongly favoring plaintiff.

One of the theories on which plaintiff's case was tried in the circuit court was that the employment of plaintiff by defendant was in violation of Code, 21-6-1, as amended, relating to child labor, which reads: "Except as permitted and authorized by the provisions of this article, no child under sixteen years of age shall be employed, permitted or suffered to work in, about, or in connection with any gainful occupation other than agriculture, horticulture or domestic service in a private home."

In *Norman* v. *Virginia-Pocahontas Coal Co.,* 68 W. Va. 405, 69 S. E. 857, the Court, after considering authorities relating to liability of an employer who employs a minor in violation of a statute, reached this conclusion: "The point is one of first instance with us. We adopt the view that seems consonant with reason. Briefly stated, it is this: The violation of the statute is actionable negligence whenever that violation is the natural and proximate cause of an injury. The true question to be determined in an action based upon a failure to obey a statute like the one under consideration is: Did the unlawful employment cause the injury? The trial of the case must be guided by this question. If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the non-observance of the law. But if the injury is one that happened by causes independent of the violation of the statute, it is not actionable on the basis of that violation. If an intervening event against which the statute evidently did not intend to provide, and the appearance of which was not anticipated by the spirit and purpose of the act, has in fact caused the injury, that event is plainly the proximate cause." See *Burke* v. *Big Sandy Coal and Coke Co.,* 68 W. Va. 421, 69 S. E. 992.

In *Pitzer* v. *M. D. Tomkies & Sons,* 136 W. Va. 268, 67 S. E. 2d 437, the plaintiff, a boy of about thirteen years and seven months of age, was employed by the defendant

in connection with the operation of a grocery store. While delivering groceries on a bicycle he suffered the injury for which damages were sought. The Court permitted recovery, holding: "2. The violation of a statute forbidding the employment of a child under the age of sixteen years in a gainful occupation is actionable negligence whenever such violation is the natural and proximate cause of an injury." See *Irvine* v. *Union Tanning Company,* 97 W. Va. 388, 125 S. E. 110; *Wills* v. *Montfair Gas Coal Company and Thomas Jarrett,* 97 W. Va. 476, 125 S. E. 367; *Mangus* v. *Proctor-Eagle Coal Co.,* 87 W. Va. 718, 105 S. E. 909; *Griffith* v. *American Coal Co.,* 75 W. Va. 686, 84 S. E. 621, L. R. A. 1915F 803; *Dickinson* v. *Stuart Colliery Company,* 71 W. Va. 325, 76 S. E. 654, 43 L. R. A., N. S., 335; *Honaker* v. *Coal Co.,* 71 W. Va. 177, 76 S. E. 180; *Blankenship* v. *Ethel Coal Co.,* 69 W. Va. 74, 70 S. E. 863.

In *Clover Creamery Co., Inc.* v. *Kanode,* 142 Va. 542, 129 S. E. 222, plaintiff's decedent, a boy eleven years of age, was engaged by a servant of defendant to assist in the delivery of milk from defendant's milk wagon. The boy was killed while engaged in that service. The applicable Virginia statute was to the same general effect as the statute quoted above. The Court stated: "The driver of the wagon having no authority, and there being no necessity for him to employ assistants, his act in securing the plaintiff's intestate to assist him was beyond the scope of his employment; and the defendant, having failed to ratify such employment, the defendant is not bound by the act of his servant.

"The defendant having no knowledge that the driver had engaged the plaintiff's intestate to assist him, it cannot be said that the defendant permitted or suffered plaintiff's intestate to work in his service. It follows that there has been no violation of the statute by the defendant and that there can be no recovery against it for the injuries complained of." See *Nolde Bros.* v. *Chalkley,* 184 Va. 553, 35 S. E. 2d 827; *Standard Red Cedar Chest Co.* v. *Monroe,* 125 Va. 442, 99 S. E. 589; *Miller Mfg. Co.* v. *Loving,* 125 Va. 255, 99 S. E. 591.

In *Armstrong's Adm'r.* v. *Sumne & Ratterman Co.*, 211 Ky. 750, 278 S. W. 111, a boy not quite thirteen years of age was killed while assisting a driver of a milk truck of defendant in the delivery of milk. The applicable Kentucky statute was to the same general effect as the West Virginia statute quoted above. The Court held: "1. To render a master liable for death of infant riding with servant of defendant, under Ky. St. § 331al, providing that no child under 14 shall be employed, permitted, or suffered to work in enumerated instances, he must have actual or perhaps imputed knowledge of fact that infant is rendering service, as the etymological definition of the words 'permit' and 'suffer' imply and include knowledge on part of one so charged of facts or things which he permits or suffers." It was also held, in the same case: "3. For master to be liable for acts of servant, even when done within apparent scope of servant's authority, it must be done in furtherance of master's business and for and on his behalf and not for or on behalf of servant."

While the authorities are not unanimous, we think the foregoing holdings illustrate the correct rule, and the rule heretofore adopted by this Court, with reference to liability of an employer as to injuries suffered by a minor employed in violation of a statute in the nature of the one involved here. See *McGowan* v. *Ivanhoe Mfg. Co.*, 167 N. C. 192, 82 S. E. 1028; *Bernal* v. *Baptist Fresh Air Home Soc.*, 87 N.Y.S. 458; *Curtis & Gartside Co.* v. *Pigg*, 39 Okla. 31, 134 P. 1125; *Spivey* v. *Lovett & Brinson*, 48 Ga. 335, 172 S. E. 658; *Gorczynski* v. *Nugent*, 402 Ill. 147, 83 N. E. 2d 495; *Silver King Coalition Mines Co.* v. *Lindseth*, 19 F. 2d 221; 56 C.J.S., Master and Servant, Section 194; 31 Am. Jur., Labor, Section 435.

From the evidence outlined, and in the light of the holdings mentioned above, it seems clear that plaintiff was not an employee of defendant at the time of the injury, within the meaning of the child labor act. As above pointed out, no express contract of employment by defendant was attempted to be established. Neither was any implied contract of employment established by plain-

tiff. Neither was there any attempt to establish that any agent or representative of defendant had any right or authority to employ plaintiff or any other person to work at the mill. Such authority can not be presumed in the circumstances of this case. The mere fact that plaintiff assisted his father on a few occasions, over a period of only four or five days, in the performance of duties assigned to the father, and for which the father was compensated, is not sufficient to create any such presumption. We think it also clear that plaintiff was not "permitted" or "suffered" by defendant to work at the mill at the time of the injury within the meaning of the child labor act. To have "permitted" or "suffered" plaintiff to work about the mill, defendant would have had to have knowledge that he was working there. See 32 Words and Phrases 144, "Permission; Permit". As to such knowledge, the most that can be inferred from the evidence is that plaintiff was with and assisted his father at the mill on certain occasions, in the early evenings of the four or five days immediately preceding the injury, and that defendant was charged with notice of such facts. Obviously, such facts would not inform defendant that plaintiff was working as an employee at the mill, especially late into the night. Neither could defendant have anticipated that plaintiff would have been permitted or suffered about the mill late at night merely from the fact that he visited his father early in the evening, even though defendant knew that plaintiff performed some slight services which were supposed to have been performed by the father. That being true, the injury could not have been anticipated or foreseen by defendant. The injury was not "a natural and probable consequence of a violation of the statute". It was not "directly caused by the non-observance of the law". *Norman* v. *Virginia-Pocahontas Coal Co., supra.* Apparently the mother and the young brother of plaintiff also assisted the father about the mill in the evenings. Is it not somewhat absurd to say that defendant impliedly approved the employment of three additional employees to watch the mill at night?

Moreover, the evidence of plaintiff indisputably establishes that the father and mother of plaintiff attempted to have plaintiff leave the mill earlier in the evening before the accident. Plaintiff was at the mill, at the time of the injury, against the advice and instructions of the father and mother. To hold an employer liable in such circumstances, under the child labor law, would, in effect, require him to continuously police his premises, even against trespassers who disobeyed orders or directions of a night watchman. That is not required by the holdings mentioned above, or by sound reasoning.

Plaintiff would also sustain the judgment on the theory that he was an invitee of defendant at the time of the injury; that defendant owed him the duty of keeping the premises in a reasonably safe condition; and that the maintaining of the fire at the mill constituted a dangerous and unsafe condition. He would rely on cases like *Williams* v. *Belmont Coal & Coke Co.*, 55 W. Va. 84, 46 S. E. 802. We are of the view that there is no merit in the position. Even if plaintiff should be treated as an invitee, which appears doubtful, the maintaining of the fire did not constitute a hidden danger. The fire was in plain view. The plaintiff was fully aware of its existence. True, there is some evidence to the effect that ashes covered the burning coals at the point where plaintiff was burned, but that point was only about twelve feet from the center of the fire, where burning coals, at such a fire, would be expected. Moreover, the presence of plaintiff at the fire after midnight certainly could not have been anticipated by defendant. See *Tiller* v. *Baisden,* 128 W. Va. 126, 35 S. E. 2d 728; *White* v. *Kanawha City Co.*, 127 W. Va. 566, 34 S. E. 2d 17; *Wiseman* v. *Terry,* 111 W. Va. 620, 163 S. E. 425; *Bradley Lumber Co.* v. *Crowell,* 28 Ala. App. 12, 178 So. 66. In the *Bradley Lumber Co.* case the Court held: "1. An ash pile covered with a crust so as to conceal fire contained therein, located on owner's premises on which it was alleged children frequently played, at a place where ash pile could not be seen by a child until child had already become a trespasser, did not constitute 'an instru-

mentality of a character likely to attract children,' and hence owner was not liable for injuries sustained by 11 year old boy when he stepped through crust and was burned."

Plaintiff also argues that the mill constituted "a dangerous instrumentality", and that the owner was required to "exercise reasonable care to avoid injury to children whose presence is known or might reasonably be anticipated". He would rely on *Wiseman* v. *Terry,* 111 W. Va. 620, 163 S. E. 425, and similar cases. As to the evidence on this point, we think it not established that defendant knew of, or should have anticipated, children on the premises where plaintiff was burned, especially late at night. On a few occasions children were at the mill, but were usually, if not always, in the custody or presence of adults. There is no evidence that children were in the habit of playing at the mill late at night, and very little evidence that they played there in the daytime or early evenings. We can not say that the maintenance of the fire at the mill necessarily constituted a dangerous situation. It was a necessary, or at least an accepted, practice in the operation of the mill. In *Tiller* v. *Baisden,* 128 W. Va. 126, 35 S. E. 2d 728, we held: "A controlled fire used to destroy trash and other refuse is not a dangerous instrumentality or agency, such as is required to be guarded against the possibility that children may be attracted thereby and suffer injury therefrom." It may also be pointed out that the attractive nuisance doctrine is not recognized in this State. See *White* v. *Kanawha City Co.,* 127 W. Va. 566, 34 S. E. 2d 17.

Defendant contends that the action of the trial court in giving unto the jury plaintiff's Instruction A constituted prejudicial error. The instruction would permit recovery by plaintiff on the theory that defendant permitted or suffered plaintiff to work at the mill in violation of the child labor act. As pointed out above, the evidence was insufficient to permit recovery on that theory. The

giving of the instruction, therefore, constituted prejudicial error.

Defendant also contends that the trial court committed prejudicial error in admitting into evidence plaintiff's Exhibits 1, 2, 3 and 4. The exhibits are photographs of children and adults at or near the mill site, and were taken on a Sunday when the mill was not in operation, apparently before the fire maintained at the mill was commenced, and sometime before the Hansford Harper family moved to the dwelling near the mill site. The exhibits were introduced by plaintiff, in rebuttal, evidently for the purpose of establishing that children played at the mill. The photographs appear to have at least some slight relevancy to the issue involved, but probably should have been introduced by plaintiff as evidence in chief. However, the trial court had discretion as to the manner of introduction of the evidence, and we can not say that such discretion was abused. See *Weaver v. Wheeling Traction Co.*, 91 W. Va. 528, 114 S. E. 131.

The judgment of the Circuit Court of Boone County complained of is reversed, the verdict of the jury set aside, and defendant is awarded a new trial.

*Reversed;*
*verdict set aside;*
*new trial awarded.*

RILEY, JUDGE, dissenting:

In deference I dissent from the holding of the Court in reversing the judgment of the Circuit Court of Boone County, setting aside the verdict of the jury, and awarding the defendant a new trial. In so dissenting, I do not disagree with the postulates contained in all of the points of the syllabus, as, in my opinion, the points of the syllabus set forth correct propositions of law.

I definitely agree with the abstract statements contained in point 2 of the syllabus that: (1) The employment of a child in violation of the provisions of Article 6, Chapter 21, of the Code, as amended, is actionable negli-

gence only when such violation is the natural and proximate cause of the injury, and (2) in an action based on negligence in the employment of a child in violation of the child labor act, an employer is not liable for having permitted or suffered a child to continue in his employment, unless he knew, or should have known, that the child was performing work for the employer. I am of opinion, however, that this record contains sufficient probative evidence from which the jury could find from a preponderance thereof that the defendant knowingly and in violation of Code, 21-6-1, as amended, "permitted or suffered [the plaintiff, an infant under sixteen years of age] to work in, about or in connection" with defendant's sawmill, which defendant was operating on West Fork Creek, in Boone County, at the time plaintiff was injured; and that such violation of the statute was, at least for jury determination, the natural and proximate cause of plaintiff's injury.

As the verdict of the jury was in plaintiff's favor, the holding of the Court in this case fails to apply the rule of law governing the consideration of jury trials of actions involving personal injuries, well established in the practice and procedure of this State, and stated in point 1 of the syllabus of *Fielder, Admx.* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115, that: "Before directing a verdict in defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence", which postulate has been applied by this Court in many cases, the last of which is contained in point 1 of the syllabus of *Butcher* v. *Stull*, decided at this term of Court, on June 8, 1954, in which this Court held: "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be con-

sidered, and those facts, which the jury might properly find under the evidence, assumed as true."

In all deference to the able Judge who wrote the opinion of the Court and the members of the Court who concurred therein, I am constrained to dissent from the decision arrived at by the Court, because, as disclosed by the syllabus of the opinion and the opinion itself, the Court arrived at its decision to reverse the judgment of the trial court of Boone County, set aside the verdict of the jury and grant the defendant a new trial on the unsound assumptions that: (1) The child labor statute, Article 6, Chapter 21 of the Code, as amended, is applicable only to a child under sixteen years of age who is "employed * * * in connection with any gainful occupation other than agriculture, horticulture or domestic service in a private home"; (2) that the record contains no probative evidence from which the jury could find from a preponderance thereof that the defendant "permitted or suffered", the plaintiff, Billie Harper, an infant under the age of sixteen years, to work in violation of the provisions of Article 6, Chapter 21, of the Code, as amended; and (3) that the plaintiff at the time he was injured was not engaged in a "gainful occupation other than agriculture, horticulture or domestic service in a private home". I shall at this time discuss in seriatim the assumptions, which I deem unsound, upon which the Court arrived at its decision.

In the first place only a casual reading of Section 1 of Code, 21-6, as amended, convinces me that a child under sixteen years of age need not be "employed", in order to bring such child within the purview of Section 1. This section is expressed in clear and unambiguous language. The pertinent provision thereof is: "No child under sixteen years of age shall be * * * permitted or suffered to work" in the occupations inhibited by the statute.

Secondly, applying the rule, which has become imbedded in the practice and procedure of this State involv-

ing the verdicts of juries in actions to recover for personal injuries, contained in point 1 of the syllabus of *Fielder, Admx.* v. *Service Cab Co., supra,* and in point 1 of *Butcher* v. *Stull, supra,* this record contains beyond peradventure sufficient probative evidence from which the jury could have found, as it did, that the defendant knew, or should have known, that plaintiff at the time he was injured was working in and about defendant's sawmill in violation of the statute. Plaintiff's mother, Lottie Mae Harper, testified as to the kind of work, she, her husband, Hansford Harper, and the plaintiff, Billie Harper, did in and about defendant's sawmill. She testified that "We would sweep and shovel the saw dust from all around the saws where it fell, and we took and throwed it in the chain line. We would sweep it up and get it on the shovel, and Billie would carry it and throw it in the chain line." Plaintiff's father testified that on an occasion when plaintiff's father, mother, small brother, and plaintiff were working at the sawmill, the defendant came through the mill and remarked, "Well, we've got a gang of night watchmen here tonight." Plaintiff testified that on another occasion S. T. Miller, defendant's foreman at the sawmill, saw plaintiff working, and asked him, "Are you working hard?" and after plaintiff had answered affirmatively, the foreman remarked, "That's the way you get get it done." Mrs. Harper also testified that the defendant Cook and defendant's foreman Miller saw plaintiff and his mother working at the sawmill, after plaintiff was burned, and Ettis Miller, defendant's employee, after denying on direct examination that plaintiff had "any job of work around the mill", testified that plaintiff "was down there helping clean up the sawdust. I don't know what he was doing—whether he was working cleaning up or not."

And, finally, that plaintiff was engaged in a gainful occupation, when he was helping his father in the performance of his father's duties in cleaning up the sawdust around the mill, cannot be gainsaid. As Section 1 of the statute does not require an infant under sixteen years of

age to be employed in the relationship of master and servant in order to bring the infant within the scope of the statute, plaintiff, in helping his father in his work of sweeping and cleaning the sawmill, was employed in a gainful occupation; and this position is consonant with the legislative intent, when we consider that the statute excepts in express language infants engaged in the work of agriculture, horticulture, or domestic service in a private home.

A violation of a statute such as Section 1 of Code, 21-6, constitutes actionable negligence, when that violation is the natural and proximate cause of the injury. *Norman* v. *Virginia-Pocahontas Coal Co.*, 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N. S.) 504, 42 L. R. A. (N. S.) 626n, 48 L. R. A. (N. S.) 658n, and 668n; *Wills* v. *Montfair Gas Coal Co.*, 104 W. Va. 12, 21, 138 S. E. 749. Such being the principle of law which should control the decision in this case, it is my considered opinion that it was within the sole province of the jury to find that, if plaintiff had not been working at defendant's sawmill in the manner disclosed by this record, he would not have been injured; and, therefore, defendant's violation of the statute, under the verdict of the jury, was the proximate cause of plaintiff's injury. After all, it must be said that Code, 21-6, the child labor statute, was enacted with the underlying salutary purpose of protecting children from the hazards of dangerous employment. The statute, therefore, in its very terms is remedial, and, being clear in its terms, should be liberally applied to effectuate the intention of the Legislature. As Code, 21-6, in Section 1 thereof is remedial in its nature, and in Sections 9 and 10 thereof is penal in its terms, the statute, in so far as it is remedial, should be liberally applied to the end that the evil sought to be corrected and the relief which the Legislature intended to afford should be effectuated. *State ex rel. Reeves* v. *Ross*, 62 W. Va. 7, 57 S. E. 284. In so far as the statute is penal in its nature, it should be strictly con-

strued and applied. *State* v. *Cunningham*, 90 W. Va. 806, 111 S. E. 835.

I simply say with deference to the members of this Court, who participated in the opinion of the Court, that this case has been decided in direct contravention of the clear and mandatory provisions of the child labor law, contained in Code, 21-6, and in disregard of the mandate of the legislative fiat contained therein.

For these reasons I would affirm the judgment of the Circuit Court of Boone County.