ANGELO PAOLINO *vs.* FRANK MCKENDALL.

PROVIDENCE—OCTOBER 6, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negligence. Duty to Infant Trespasser.*

There can be no recovery against an occupier of premises in favor of an infant of tender years, who has been allured to the premises by means of a fire kindled thereon, and been injured thereby while at play, on the ground of an implied invitation from the owner's knowledge that the lot was used as a playground for children without objection, or of a duty on the part of the occupier to exercise care to prevent injury therefrom to such children. Such an implied invitation could be extended no farther than to cast a legal duty upon the occupier not to willfully subject the infant to injury.

*Railroad Co.* v. *Stout*, 17 Wall. 657, and *Union Ry. Co.* v. *McDonald*, 152 U. S. 262, the so-called "Turntable Cases," discussed and disapproved. *Bishop* v. *R. R. Co.*, 14 R. I. 314, discussed. *Goodwin* v. *Nickerson*, Dec. 3834, O. T. 1891, overruled. *Lemieux* v. *Darling*, Ex. 2688, 1900, explained.

TRESPASS ON THE CASE for negligence. Heard on demurrer to declaration, and demurrer sustained.

ROGERS, J. This is a demurrer to both counts of the plaintiff's declaration in an action of trespass on the case for negligence. The first count is as follows : "For that the said defendant on to wit the 8th day of July, A. D. 1901, by his agents and servants was engaged in erecting a building on Swiss street near Knight street, public highways in the city of Providence ; that near to and adjoining the lot upon which said building was erected was a vacant lot which for a long time theretofore had been used by the occupiers of the premises in the vicinity and neighborhood thereof as a common resort for pleasure of said occupiers and as a play ground for

their children and in which the plaintiff's intestate, a child of
one of said occupiers, and other children, the children of said
occupiers, with the knowledge and consent and by the invi-
tation of the owner of said premises were accustomed to play
to the knowledge of said defendant; and that on to wit the
8th day of July, A. D. 1901, the said defendant by his agents
and servants lighted a large fire upon said lot for the purpose
of burning waste materials used in the building of said house.
And the plaintiff avers that it was the duty of the defendant to
take and use reasonable and proper means and precautions to
prevent accident or injury happening to the plaintiff's intes-
tate while using said parcel of land as a play-ground aforesaid
and to keep and maintain said fire so started by him as aforesaid
properly guarded and protected against damage to the lives of
children of tender years who might go, wander or be allured
or attracted thereto by their childish instincts, yet the defend-
ant well knowing the premises but not regarding his duty
therein as aforesaid, neglected, failed and refused to take
and use reasonable and proper means to prevent accident or
injury to the plaintiff's intestate while using said parcel of
land as a play-ground as aforesaid and did not keep and main-
tain said fire so started as aforesaid properly protected and
guarded.    And the plaintiff avers that on, to wit, the 8th
day of July, A. D. 1901, at Providence, the plaintiff's intes-
tate who was then and there a child of tender years, to wit,
of the age of five years, being a child of one of the occupiers
of the premises in the vicinity and neighborhood of said parcel
of land, while using said parcel of land as a play-ground afore-
said with the knowledge and consent and by the invitation of
the defendant and while in the exercise of due care and allured
and induced by her childish instincts to approach said fire her
dress suddenly caught fire from said flame and she was so
seriously burned that in consequence thereof she died."

The second count is substantially like the first, except that
it is alleged that the defendant was building the house as a
contractor, and it is not alleged that the plaintiff's intestate
went upon the lot by reason of any invitation of the defend-
ant or the owner of said lot.

The grounds of demurrer to the first count are, 1st,—because it does not state facts sufficient to constitute a cause of action ; 2nd,—because it does not set forth with sufficient certainty wherein said defendant's negligence consists ; and 3rd,—because it appears therein that the injury to the plaintiff's intestate was caused by her own negligent act in approaching said fire.

The grounds of demurrer to the second count are the same as those to the first count with two additional grounds, but the third ground to the first count constitutes the fifth ground to the second count.    The third and fourth grounds of demurrer to the second count are, 3rd,—because there is no averment therein that plaintiff's intestate was upon said lot upon the invitation, or with the knowledge or consent of said defendant, or upon the invitation or with the knowledge or consent of the owner of said lot, if said defendant was not the owner thereof, nor is there set forth in said count any facts showing such invitation, knowledge or consent ; 4th,—because according to the allegations in said second count the defendant owed no duty to the plaintiff's intestate to keep her from being injured as set forth in said count while on said premises.

(1)    In the words of the plaintiff's brief : "The plaintiff bases his case solely upon the theory that an occupier of land, having thereon dangerous agencies, to which children of tender years, too untrained and inexperienced to appreciate the dangers and resist the temptations placed before them, are likely to be allured or attracted, is under the duty of exercising the care which an ordinary person would exercise in the premises to prevent injury therefrom, to such children either by guarding or enclosing the dangerous agency, or by giving warning to parents of the existence of the danger."

The words "by the invitation of," referring to the owner or occupier of the premises, in connection with the use of said lot as a common resort as a play-ground for the children of the neighborhood including the plaintiff's intestate, are more than once used in the first count of the declaration, yet an *express* invitation is nowhere alleged and those words are

always preceded by the words "with the knowledge and consent and." With such a use of words coupled with the theory upon which the plaintiff bases his claim as shown in the above quotation from his brief, we understand that the only invitation to use said lot as a play-ground for children intended to be alleged, was only a constructive invitation, or such, if any, as could be implied from the owner's or defendant's knowing said lot was so used without objection made, and that as to the fire there was no invitation to approach it other than the fact of the fire being there, whereby the plaintiff's intestate was "allured and induced by her childish instincts to approach said fire." We are further led to this understanding by the fact that some of the cases cited on the plaintiff's brief proceed upon the doctrine of constructive invitation; that is, that if, by way of illustration, a person is allured or, more properly, tempted by some act of a railroad company to enter upon its land, he is not a trespasser, and it has been held that leaving a turntable unguarded is such an act. We have been thus particular in defining our understanding of the use of the word *invitation* in the first count of the declaration, because if the invitation to the plaintiff's intestate to use said vacant lot as a play-ground was express, or by implication making it equal in significance to an express invitation, the rule as to liability would be very different from what it would be if the invitation was only constructive, consisting of the kind of allurement or mere license we have referred to.

The basis of a cause of action for injury to a person by reason of negligence or want of due care, is the breach of some duty or the non-observance of some obligation that the defendant is under to the plaintiff. As said by the New Jersey Court of Errors and Appeals in *D. L. & W. R. R. Co.* v. *Reich*, 61 N. J. L. 635, 637,—"there cannot be such a thing as the negligent performance of a non-existent duty." The very first step in attempting to fasten a liability upon a defendant is to show a duty he is under, either by commission or omission, to the plaintiff. Having done that the next step is to show the breach or neglect of such duty. "There is a

clear distinction," said this court in *Beehler* v. *Daniels, Cornell & Co. et al.*, 18 R. I. 563, 565, "between a license and an invitation to enter premises, and an equally clear distinction as to the duty of an owner in the two cases. An owner owes to a licensee no duty as to the condition of premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril or willfully cause him harm ; while to one invited he is under obligation for reasonable security for the purposes of the invitation."

In speaking of this class of cases Bigelow, C. J. in *Sweeny* v. *Old Colony, etc. R. R. Co.*, 10 Allen, 368, 373, after referring to keepers of inns and of shops, said : "The general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this : A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability ; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

As to what such an inducement or allurement is will be considered later. "The rule is," said the Supreme Court of New Jersey in *Vanderbeck et al.* v. *Hendry*, 34 N. J. L. 467, 472, "that he who enjoys the permission or passive license is only relieved from the responsibility of being a trespasser, and must assume all the ordinary risk attached to the nature of the place or the business carried on."

In the case at bar the defendant is sought to be made liable upon the doctrine of a series of cases called the "Turntable Cases," consisting of *Railroad Co.* v. *Stout*, 17 Wall. 657, decided in 1873, and reviewed and adhered to in *Union Pacific Ry. Co.* v. *McDonald*, 152 U. S. 262, decided in 1894, and of other cases following it. In the Stout case a boy six years old was injured while playing on a railroad company's land on a railroad turntable that was not attended or guarded by any servant of the company, was not fastened or locked, and revolved easily on its axis. The propositions laid down in that case by Hunt, J. delivering the opinion, are that "while it is the general rule in regard to an adult, that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case." Further, that "while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts."

The doctrine of that series of cases is thus clearly and comprehensively stated in 7 A. & E. Enc. of L. 2d ed. 403, 404 : "When a child of tender years commits a mere technical trespass, and is injured by agencies that to an adult would be open and obvious warnings of danger, but not so to a child, he is not debarred from recovering, if the things instrumental in his injury were left exposed and unguarded, and

were of such a character as to be likely to attract children, excite their curiosity, and lead to their injury, while they were pursuing their childish instincts. Such dangerous and attractive instrumentalities become an invitation by implication."

The facts alleged in both counts of the declaration in the case at bar are so analogous to those in the " turntable cases " as to make the principle of law properly applicable to one also applicable to the other, and inasmuch as the rule of the so-called " turntable cases " has been adopted by many courts, thus affording ample authority, yet whether we shall follow that rule depends upon the weight of the reason on which it rests, for some of the courts which have recognized the rule have limited its operation strictly to turntables. and other dangerous and attractive machinery, and it has been utterly rejected by the courts of last resort of New Hampshire, in 1886, Massachusetts, in 1891, New York, in 1895, Texas, in 1897, New Jersey in 1898, West Virginia in 1898 and again in 1901, Michigan in 1901, and Georgia in 1901. See *Frost* v. *Eastern R. R.*, 64 N. H. 220 ; *Daniels* v. *New York & New England R. R. Co.*, 154 Mass. 349 ; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301 ; *Dobbins* v. *Missouri, &c., Ry. Co.*, 91 Tex. 60 ; *Delaware, &c., R. R. Co.*, v. *Reich*, 61 N. J. L. 635 ; *Ritz* v. *City of Wheeling*, 45 W. Va. 262 ; *Uthermohlen* v. *Bogg's Run Co.*, 50 W. Va. 457 ; *Ryan* v. *Towar et al.*, 87 N. W. Rep. 644 ; *Savannah, &c., Ry. Co.* v. *Beavers*, 113 Ga. 398.

The disapproval of *Railroad Co.* v. *Stout* in the cases just cited is very emphatic, and the President of the Supreme Court of Appeals of West Virginia, in *Ritz* v. *City of Wheeling, supra*, concludes his stricture upon it in this wise (page 270) : "I am guilty of no undue assumption in condemning the Stout case, as it has received in some courts, the most eminent in the land, open condemnation ; and in others criticism tantamount to condemnation ; and some which followed it limit its application to its facts or desire to recant."

It is apparent as stated in the New Jersey case of *D. L. & W. R. R. Co.* v. *Reich, supra*, and in the West Virginia case

of *Uthermohlen* v. *Bogg's Run Co.*, *supra*, that the principle on. which the doctrine of liability rests in the "turntable cases," if sound, must be applicable more widely than to railroad companies and their turntables; and that it would require a similar rule to be applied to all owners and occupiers of land in respect to any structure, machinery or implement maintained by them, which presented a like attractiveness and furnishes a like temptation to children.

The Stout case was decided in October, 1873, and since then has been referred to at least twice in the court of last resort in this State. *Bishop* v. *Union R. R. Co.*, 14 R. I. 314, decided in January, 1884, was a case of negligence where two empty horse cars of the defendant fastened together one behind the other, and drawn by a single horse, were driven slowly over the company's tracks in a public highway in the city of Providence by a driver occupying the platform in front of the forward car, from the stable in Elmwood to the repair shop on Thurber's avenue. The plaintiff, a boy, six years old, to outstrip a playmate with whom he was racing, jumped on the rear platform of the leading car and soon afterwards fell off or jumped off, and was seriously injured. After nonsuit the plaintiff petitioned for a new trial, which was denied, and Durfee, C. J., delivering the opinion, in referring to a dangerous object left exposed without guard or attendant, in a place of common resort for children said : "An object so left is a standing temptation to the natural curiosity of a child to examine it or to his instinctive propensity to meddle and play with it. In *Keffe* v. *Milwaukee & St. Paul Ry. Co.*, 21 Minn. 207, which was precisely like *Stout* v. *Sioux City, &c., R. R. Co.*" (the name of the Stout case in the court below) "this peculiarity was specifically stated and commented on as the ground of liability. 'The defendant knew,' say the court, 'that by leaving this turntable unfastened and unguarded, it was not merely *inviting* young children to come upon the turntable, but was holding out an *allurement* which, acting upon the natural instincts by which children are controlled, drew them by those instincts into hidden danger.' These cases seem to reach the limit of liability. They go be-

yond what was thought to be the limit in *Mangan* v. *Atterton*, L. R. 1 Exch. 239." The court then proceeds to distinguish the case from the turntable cases.

In *Goodwin* v. *Nickerson & Dugan*, an unreported case, being Dec'n No. 3834 in this court, O. T. 1891, the declaration set out that the defendants, being in the business of moving buildings, in the course thereof used their own lot situated on South Bend street in Pawtucket, a public highway (and surrounded by many houses and entirely open and unfenced and commonly used by children of tender age as a play-ground), for storing and placing thereon large quantities of timber and blocking, and were in the habit of piling such blocking and timber in such manner that certain long timbers by being placed upon a pier of said blocking were easily tilted or balanced and formed what is commonly known as a "see saw," thus rendering said timber upon said piles of blocking not only dangerous from its liability to fall but also attractive to children, etc., whereby the duty devolved upon the defendants to take such care in the piling of such timbers and blocking so to place them that they should not attract children thereto and that the same should not be in danger of falling upon and crushing said children, and so to fence and otherwise to protect said lot and said pile of timber and blocking that children should be prevented from coming thereupon, or in such proximity thereto as to cause peril to life ; and alleging defendants' neglect of said duty whereby a large beam fell upon the plaintiff's son, less than four years old, who had been attracted to said lot by said timbers, and so grievously injured him as to cause death. The defendants demurred and the court overruled the demurrer in a short rescript in this wise : "The court is of the opinion that the plaintiff's case as set forth in the declaration falls within the class of cases represented by *Railroad Co.* v. *Stout*, 17 Wall. 657."

The recognition of the authority of the Stout case accorded in the Bishop case is altogether too dubious, and that in the Goodwin case is too little considered, to establish a rule of law by which we are willing to abide in the case at bar and

in future cases. In the Bishop case the court not only does not follow the Stout case but attempts to distinguish it, and characterizes it as "seeming to reach the limit of liability," if not, indeed, intimating that it has exceeded it by the reference to *Mangan* v. *Atterton*, L. R. 1 Ex. 239. In the Goodwin case the Stout case seems to have been accepted as authority as a matter of course, apparently without mature consideration, notwithstanding the very equivocal treatment of it in the Bishop case, and the fact that our neighboring State of New Hampshire in *Frost* v. *Eastern Railroad, supra*, decided in 1886, four years before the Goodwin case, declined to follow the Stout case in the following unambiguous terms : " We are not prepared to adopt the doctrine of *Railroad Co.* v. *Stout*, 17 Wall. 657, and cases following it, that the owner of machinery or other property attractive to children is liable for injuries happening to children wrongfully interfering with it on his own premises. The owner is not an insurer of the safety of infant trespassers."

The reasoning of the Stout case is so unsatisfactory that we cannot give it our approval, and it is evident from the trend of decisions during the last seven years that disapproval of the doctrine of that case has been greatly on the increase. The Supreme Court of Michigan speaking as late as October 22, 1901, in *Ryan* v. *Towar, et al., supra*, said : " The rule laid down in *Railroad Co.* v. *Stout* must be a general one, applicable to everyone ; and, aside from the impropriety of judicial legislation, a wise public policy should forbid such a sweeping innovation by judicial main strength. In innumerable cases the courts have applied and continue to apply the general rule that a landowner need not protect a trespasser, every case being an assertion of the principle which is disregarded in the cases relied on by the plaintiff. We have cited a few of them—enough, we think to show that the great weight of authority does not sustain the principle of the Turntable Cases. While some of the courts have followed the rule of *Railroad Co.* v. *Stout*, both the courts and profession have evinced a tendency to allow this innovation to go no further, and refuse to consider it applicable to other cases every way

analogous. They speak of the cases generically, as the 'Turntable Cases,' and treat such cases as exceptional. We are of the opinion that they are exceptional, and that they are not based upon principle, but contravene one of the old and established rules of the law ; and we therefore decline to recognize them as authority, preferring to adhere to the better doctrine of the other cases cited. The defendant owed no duty to these children, who were trespassers."

We find no satisfactory ground for the distinction, sought to be made, between infants and adults in the duty of the owner or occupier of land to a mere trespasser to keep his premises safe. Clark, J. in *Frost* v. *Eastern Railroad, supra,* states the law very clearly in this wise : "A landowner is not required to take active measures to insure the safety of intruders, nor is he liable for an injury resulting from the lawful use of his premises to one entering upon them without right. A trespasser ordinarily assumes all risk of danger from the condition of the premises ; and to recover for an injury happening to him he must show that it was wantonly inflicted, or that the owner or occupant, being present and acting, might have prevented the injury by the exercise of reasonable care after discovering the danger. . . . The maxim that a man must use his property so as not to incommode his neighbor, only applies to neighbors who do not interfere with or enter upon it. . . . To hold the owner liable for consequential damages happening to trespassers from the lawful and beneficial use of his own land would be an unreasonable restriction of his enjoyment of it. . . .

One having in his possession agricultural or mechanical tools is not responsible for injuries caused to trespassers by careless handling, nor is the owner of a fruit tree bound to cut it down or enclose it, or to exercise care in securing the staple and lock with which his ladder is fastened, for the protection of trespassing boys who may be attracted by the fruit. Neither is the owner or occupant of premises upon which there is a natural or artificial pond, or a blueberry pasture, legally required to exercise care in securing the gates and bars to guard against accidents to straying and trespassing children. The owner is

under no duty to a mere trespasser to keep his premises safe ; and the fact that the trespasser is an infant cannot have the effect to raise a duty where none otherwise exists. 'The supposed duty has regard to the public at large, and cannot well exist as to one portion of the public and not to another, under the same circumstances. In this respect children, women, and men are upon the same footing. In cases where certain duties exist, infants may require greater care than adults, or a different kind of care ; but precautionary measures having for their object the protection of the public must as a rule have reference to all classes alike.' *Nolan* v. *N. Y. N. H. & H. R. R. Co.*, 53 Conn. 461."

Again, the Stout case, it seems to us, errs in construing a mere temptation as an allurement sufficient to legally constitute an invitation to enter the premises of another. "Temptation," says Holmes, J., in delivering the opinion in *Holbrook* v. *Aldrich*, 168 Mass. 15, "is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen."

It is not easy to give an exhaustive definition within reasonable limits, of exactly what is meant by the words "allurement, or inducement" that legally operate to constitute an invitation to enter the premises of another, but as we have seen that mere temptation does not form such an inducement, a single illustration of what would form such an inducement will be sufficient for our purpose. *Sweeny* v. *Old Colony, &c., R. R. Co.*, 10 Allen, 368, from which we have already quoted as to the difference in the duty of an owner or occupier of land to one who enters upon his land by invitation express or implied, and to one who enters without such invitation, even if he has a mere naked license or permission to enter or pass over the land, affords us that illustration. In that case a railroad company that had made a private crossing over its track, at grade, in a city, and allowed the

public to use it as a highway, and stationed a flagman there to prevent persons from undertaking to cross when there was danger, was held liable to damages to one, who, using due care, was induced to cross by a signal from the flagman that it was safe, and was injured by a collision which occurred through the flagman's carelessness.

We see no good purpose to be served by our further considering the general principles upon which the case at bar rests. Suffice it to say that we approve the cases hereinbefore cited as disapproving the doctrine in the Stout case, as well as a masterly monograph entitled "Liability of Landowners to Children entering without Permission," in 11 Harvard Law Review, 349–373, 434–448, by the Hon. Jeremiah Smith, formerly one of the Justices of the Supreme Court of New Hampshire,—all of which have learnedly, and some of which have exhaustively considered those principles and afford ample support for the views we entertain.

The plaintiff urges upon our attention the unreported case in this court of *Lemieux, Admr.,* v. *Darling et al.,* Ex. No. 2688, 1900, wherein the plaintiff recovered, as one exactly analogous to the case at bar. In that case the plaintiff's intestate, a child five years old, while attracted to the unfenced lot of the defendants abutting on two public highways in Woonsocket, by an apple tree thereon, the branches whereof hung over an insecurely guarded well situated 241 feet from one highway and 95 feet from the other, fell into said well and was drowned. The court in a brief rescript said : " The principal question argued, namely,—the liability of a landowner for injuries received by trespassing children from some dangerous object, agency or condition negligently permitted by such landowner to exist on the land trespassed upon, is not before us. No ruling of the court denying such liability was asked for by the defendants." After a brief recital of the instructions given by the trial justice to the jury, followed by the words,—"and no exception was taken by the defendants to such instructions," the rescript concludes as follows : "There is no evidence that the plaintiff knew that the well was not securely covered so that it would be

safe, and therefore the jury were warranted in finding that he was not negligent." That case seems to us to furnish no authority for the case at bar, for in the Lemieux case the defendants, by not raising any question of the defendants' liability to the trespassing child, practically admitted that they had been guilty of a neglected duty and defended against their liability thereon, on the ground that the child had been guilty of contributory negligence, whereas the question in the case at bar is, simply, whether, on the facts alleged in the declaration—construing the word "invited" contained therein as referring only to a constructive invitation as explained in the quotation from the plaintiff's brief hereinbefore set forth—the defendant was liable on any neglect of duty he owed to the plaintiff's intestate.

With such a construction of the word "invited," used in the first count, as intended by the plaintiff's counsel already explained, leaving both counts without an allegation of invitation to the infant, express or implied, other than a constructive one amounting almost to a mere license to enter upon the land, we are of the opinion that neither count of the declaration states facts sufficient to constitute a cause of action, because there is no breach alleged of any legal duty the defendant owed the infant; and, of course, if there was no duty owed there could be no neglect of duty, and the infant's injury was caused by his own negligent act solely in approaching the fire. We have already decided that the constructive invitation set out, or intended to be set out and hence treated by us as such, is not a sufficient invitation to cast a legal duty upon the defendant in regard to said infant, other than not *willfully subjecting* him to injury, and as no such willful injury has been alleged we fail to see how the suit can be sustained without allegation and proof of an invitation to the infant, express or implied, to enter upon said premises.

The plaintiff raises the point whether the question of what is an attraction for children is not one for the jury. In our view of the law the question in this case is not whether a fire is or is not attractive to a child, but whether on the undis-

puted facts alleged in this case, for the demurrer admits them to be true, there was any duty on the owner or occupier of the land on which this fire was located, to guard the child against it. Whether the facts alleged, not being questioned, raised a duty on the defendant in favor of the child, it seems to us is a question of law for the court that can properly be decided on demurrer. In *Ritz* v. *City of Wheeling, supra,* Brannon, President of the West Virginia Court of Appeals, on p. 263, says :—" The case is not one involving credibility of witnesses, or weight of evidence, or the proper inferences and deductions from evidence, which are matters proper for the consideration of a jury ; for the material facts of the case are undisputed, and the case presents simply the question of law whether, upon the facts, a liability rests on the city. . . Where the case turns on the weight and effect of the evidence in proving or not proving facts necessary to support the action, and the evidence appreciably goes to prove such facts, it ought to go to the jury, a ▓▓▓ dict upon such evidence gives it a force which it mi▓▓▓ have with the judge before verdict, and fortifies the ca▓▓ more against the action of the court, as the court cannot set the verdict aside unless plainly and decidedly contrary to or without evidence ; but where the case is not such, but one of undisputed or indisputable facts, leaving it only a matter of law whether the facts show a liability on the defendant, the court should take the case from the jury, and direct a verdict, if the evidence shows no case for the plaintiff, because, if there were a verdict for him, it would be a finding against law, and the court always annuls a verdict against law upon conceded or indisputable facts."

For the reasons hereinbefore set forth we think the demurrers to both counts of the declaration must be sustained.

Demurrers sustained and case remitted to the Common Pleas Division for further proceedings.

*D. J. Holland,* for plaintiff.

*Miller & Carroll,* for defendant.