JACKIE TILLER, *An Infant, etc. v.* JEFF BAISDEN

(No. 9709)

Submitted September 25, 1945.   Decided November 6, 1945.

*Lilly & Lilly*, and *Damron & Damron*, for plaintiff in error.

*R. H. Casto*, for defendant in error.

FOX, JUDGE:

This is an action at law instituted in the Circuit Court of Logan County, in which Jackie Tiller, who sues by his next friend, is plaintiff, and Jeff Baisden, is defendant. On the trial of the action, and at the conclusion of the plaintiff's case, a motion was made to strike out plaintiff's evidence. That motion was sustained, the jury directed to return a verdict for the defendant, and judgment was rendered in his favor. Plaintiff prosecutes this writ of error.

The action grows out of an injury sustained by plaintiff, who, at the date of the injury, was a child some two months past the age of five years. The child suffered a severe burn on the lower left leg, which required treatment during a period of approximately three months. Plaintiff's testimony shows that defendant operated a grocery store in a rural community. The store faced a paved highway, which extended between the store and a stream. The distance from the defendant's store building across the highway to the stream was approximately thirty feet. There was a berm varying in width from

128

three to six feet, between the porch of store building and the highway. The paved surface of the highway was approximately eighteen feet in width. The ground on the side of the road opposite the store sloped from six to eight feet from near the edge of the highway to the stream. It was the custom of defendant, over a considerable period, to burn paper, boxes and other refuse on the bank of the stream opposite his store. A short distance from the point at which such refuse was burned, there was a bridge over the stream where children were accustomed to gather and play, and from there along the road in front of the store. On the day plaintiff was burned, an employee of defendant had ignited a bonfire out of trash and refuse on the bank of the stream and near the edge of the highway. At the time of plaintiff's injury the bonfire was burning, but had not reached large proportions, and was under control. While an employee of defendant was at the fire, whether engaged in guarding it is not shown, two persons drove up in front of the store, and called the employee across the highway to make some inquiry about merchandise. During this absence of the employee, plaintiff's clothes caught fire, and his injury resulted. While plaintiff was accompanied by other children, the manner in which his clothes caught fire is not shown. Evidently, the injury to the plaintiff resulted from his daring or curiosity.

The action is prosecuted on the theory that the bonfire in question was an attractive nuisance. The declaration refers to it as such. It has been repeatedly held by this Court that the doctrine of attractive nuisance is not recognized in this State. *Ritz* v. *City of Wheeling*, 45 W. Va. 262, 31 S.E. 993; *Uthermohlen* v. *Boggs Run Co.*, 50 W. Va. 457, 40 S.E. 410; *Conrad* v. *Baltimore & Ohio Railroad Co.*, 64 W. Va. 176, 61 S.E. 44; *Martino* v. *Rotondi*, 91 W. Va. 482, 113 S.E. 760; *Adams, Admr.* v. *Virginian Gasoline & Oil Co.*, 109 W. Va. 631, 156 S. E. 63; *White* v. *Kanawha City Co.*, 127 W. Va. 566, 34 S.E. 2d 17. We would attach no particular importance to the fact that the declaration proceeds upon a theory of re-

covery not recognized in this jurisdiction, should the plaintiff establish a right to recover on the facts pleaded.

Following the repudiation of the attractive nuisance doctrine, as shown by the cases cited above, this Court has permitted recovery for the injury or death of children against the owner of what is known as a dangerous instrumentality or agency by him negligently used, stored or otherwise employed, and stress is laid on the duty of such owner to take particular care to guard such instrumentalities or agencies against the natural curiosity of children, especially those of tender years. For example in *Rine* v. *Morris*, 99 W. Va. 52, 127 S.E. 908, the defendant had left a road scraper on the side of a highway near the home of the plaintiff, from the lever of which machine a rope was left hanging. A child eight years old pulled the rope, causing the lever to fall, resulting in injury to her. This Court held: "One leaving an instrumentality dangerous to children at a place where they have a right to be, is charged with notice of its attraction to them. It is his duty to use ordinary care to prevent injury to a child thereby." In *Wellman, Admr.* v. *Fordson Coal Co.*, 105 W. Va. 463, 143 S.E. 160, the same principle was followed. That was a case where an employee of the defendant had negligently permitted to fall and lie on the ground some blasting powder which plaintiff's decedent ignited, resulting in an explosion. In *Colebank, Admr.* v. *Nellie Coal & Coke Co.*, 106 W. Va. 402, 145 S.E. 748, the defendant had negligently stored blasting powder on its premises in a place accessible to children, in a vicinity where children were known to congregate and play. It was held that the question of the negligence of the defendant should have been submitted to the jury. In *Adams, Admr.* v. *Virginian Gasoline & Oil Co., supra,* it was held that: "An owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated." This was a case where gasoline

had been allowed to accumulate in a pool, to which children were attracted, and one of them lost his life. In *Wiseman, Admx.* v. *Terry*, 111 W. Va. 620, 163 S.E. 425, the principles announced in the *Adams* case were followed. This was a case where children were permitted to gather around a stone quarry, and an explosion occurred which resulted in the death of three of them. In *Parsons, Admr.* v. *Appalachian Electric Power Co.*, 115 W. Va. 450, 176 S.E. 862, the plaintiff's decedent lost his life through tampering with an uncovered electric wire placed on a public bridge at a distance of seventeen or eighteen feet above the floor thereof. It was held that the question of contributory negligence, on the part of plaintiff's decedent, was one for the jury, thus clearly recognizing the legal duty of the defendant not to maintain an uncovered electric wire at a place where children might reasonably be expected to come in contact therewith.

The cases cited above refer to unguarded dangerous instrumentalities or agencies of a nature attractive to children. In most instances these dangers are not open and apparent, but latent. They differ from fire in that anyone, even a child of tender years, knows what fire is, can readily observe it and recognize its dangers. Our decisions have not reached the point of holding that a controlled fire is a dangerous instrumentality or agency. Of course, everyone recognizes that fire may cause injury if permitted to get out of control, and the law makes actionable the negligent conduct of a person starting a fire, and allowing it to spread to his neighbors' premises. Whether the dangerous instrumentality rule should be extended to include a controlled bonfire has not been decided in this jurisdiction.

Having regard to this state of the law in this jurisdiction, we have made an independent investigation of the cases decided in other jurisdictions, and on this question we find the authorities are somewhat divided. In *Roman* v. *City of Leavenworth*, 90 Kans. 379, 133 P. 551, a verdict and judgment against an eleven year old boy

who was burned at the city dump, where there was an attendant paid by the city, was set aside and a new trial awarded, and it was held that the city was required to exercise reasonable care to keep children away. In *Piraccini* v. *Director General of Railroads*, 95 N.J. L. 114, 112 A. 311, a railroad company was held liable for the death of a child five years old as a result of burns suffered from a fire on its property near a playground, because of its responsibility for use of a dangerous agency. This case was reported in 36 A.L.R. 294, following which there is a note on this subject. The following comment is there made: "The reported case * * * is of interest as being apparently the only instance in which liability for the burning of a child has been put upon the ground that fire is a dangerous agency, which the one employing it is bound to safeguard. Inasmuch as the New Jersey courts do not recognize the attractive nuisance doctrine, this was the only ground upon which they could hold the defendant liable. In most cases, however, the decision has turned upon the question of recognition or application of the attractive-nuisance doctrine." In *Lombardi* v. *Wallad*, 98 Conn. 510, 120 A. 291, it was held that the owner of a tenement was liable to a six year old child for burns resulting from playing near a fire set by an attendant to burn rubbish, and that there was a duty to guard the fire where it was known children were likely to play near it. In *Arkansas Valley Trust Co.* v. *McIlroy*, 97 Ark. 160, 133 S.W. 816, it was held that: "One owes no duty to a twelve-year-old child to guard it from a fire which he has started out of doors, if the child is of sufficient intelligence and capacity to know that the fire will burn and is dangerous." It is fair to imply from this case that had the child been of the age of the plaintiff herein, recovery would have been sustained.

On the other hand a number of cases hold that there is no liability for injury resulting from unguarded fires. In *Erickson* v. *Great Northern Railway Co.*, 82 Minn. 60, 84 N.W. 462, it was held that a railroad company was not liable for the death of a four year old child from

burns received from a fire set by railroad workmen on a right of way near a public street. It was also held in that case that the attractive nuisance doctrine was limited to cases where the danger was latent. In *Paolino* v. *McKendall*, 24 R.I. 432, 53 A. 268, it was held: "Although an owner or occupant of land has knowledge that children of tender years are in the habit of going thereon to play he is under no duty or obligation to guard them from injury caused by fire set by him to consume waste materials." In City of *Harlan* v. *Peaveley*, 224 Ky. 338, 6 S.W. 2d 270, the holding was that the city was not liable for the death of a four year old child as the result of burns received while playing about a fire set to a garbage pile on a privately-owned sandbar in the river, on the ground that a fire at such a place was an attractive nuisance. In *Peck* v. *Adomatis*, 256 Mich. 207, 239 N. W. 278, it was held that the owner of a grocery store was not liable to a four year old child for burns suffered from a bonfire on the store premises for failure to guard the same, although children were known to be accustomed to go there. It was further held that a bonfire on one's own premises is not a nuisance *per se*. In *Dunbar* v. *Olivieri*, 97 Colo. 381, 50 P. 2d 64, the holding was that the maintenance of a bonfire for the purpose of burning rubbish on the owner's vacant lot did not constitute an attractive nuisance, so as to entitle a nine year old boy to recovery for injuries by fire. In *Hancock* v. *Aiken Mills, Inc.*, 180 S.C. 93, 185 S.E. 188, it was held that the defendant was not liable to a twelve year old child for burns suffered from a bonfire set by employees of the defendant to keep themselves warm, where the child was on an errand for a workman. It was also held that fire is not an attractive nuisance. In *W. F. Bradley Lumber Co.* v. *Crowell* (Ala.), 178 So. 66, the holding was that the owner of premises was not liable to an eleven year old boy, who was burned by stepping through the crust formed over a burning sawdust pile, for failure to guard the same, and that the fire concealed by the crust was not an attractive nuisance.

It will be noted that many of these cases are decided upon the attractive nuisance doctrine, others not. It seems quite apparent from these cases, and from our own cases, that courts which have repudiated the attractive nuisance doctrine have gone very far to establish liability in another way; that is, on a theory involving a dangerous instrumentality or agency. A discussion of this question will be found in 20 R.C.L. at pages 89 and 124; also 38 Am. Jur., pages 683, 742, and 779. The question is rather fully treated in the above cited note appearing in 36 A.L.R. 297.

Some of the cases cited above refer to bonfires on the owner's premises, and other refer to trespassers. Here there was neither ownership of the premises or trespass by the plaintiff, even if it should be held that a child five years of age could be held to be a trespasser. While not clearly established, the record indicates that this bonfire was set on the right of way of the highway. If so, of course, the public had a right to be there, and there could be no trespass. On the other hand it is not claimed that the burning of this trash on the highway is the proximate cause of plaintiff's injury, but that such cause was the failure of the defendant to guard the bonfire to prevent children from being burned; nor is there any claim of any latent or concealed danger. The testimony shows that the fire was under control and had not assumed any considerable proportions at the time of the injury. Therefore, the sole question is whether an ordinary bonfire under control, ignited at a place where children are known to congregate, should be considered as a dangerous instrumentality or agency, requiring the party responsible therefor to guard the same against the known tendency of children to be drawn thereto, their curiosity concerning anything attractive to them, and their failure or incapacity to recognize danger.

The question is not easy of solution. That fire attracts children is common knowledge, but, on the other hand, it is well known, that the fear of fire is instilled in

the minds of children at an early age. Fire is a necessity in every home and place of business, and children continually observe it and are warned against its danger from the day they begin to realize the existence of things around them. The use of fire being so common, under so many different and varying situations, we are impressed with the idea that we should not impose too strict a rule with reference to the care required in its use. There is a public policy involved in the matter, however severe the result of the application of that policy may be in an individual case. Fire is universally, and at all times, used in burning accumulations of trash and refuse. Its domestic use extends over a scope of activities, too numerous to mention. What defendant did in the case at bar is no more than is usual and customary around rural places of business, or around the ordinary rural home. Children are everywhere. In choosing places to play they have no respect for property lines, or for highways or other public places. They go where their instincts lead them without regard to danger. If we hold the defendant liable in this action, we open the door to a wide range of situations not heretofore considered as entailing liability. We can see little distinction between this case and that of the rural washerwoman who builds a fire at the side of the road to boil clean the soiled garments and fabrics used by her family. She, too, would have to guard her fire, and every person who permits a fire at any point on his own premises to which his neighbors' children may be attracted must guard his fire. If we allow recovery in this case, where will we be able to draw the line between liability and nonliability.

In our opinion, the cases decided by this Court, cited above, respecting liability for the use, storage or employment of dangerous instrumentalities or agencies have reached the limit to which we should go. We do not think fire is a dangerous instrumentality or agency in the sense in which those cases apply the doctrine applicable thereto. We think the weight of authority in

other jurisdictions sustains this view. As noted above, most of the cases decided by this Court were applied to situations where the danger was latent, quite different from that of a bonfire which everyone can see and which, in itself, is a warning that even the smallest child will ordinarily heed.

If, as indicated above, we cannot hold fire to be a dangerous instrumentality or agency, within the meaning of the cases defining those terms, then to justify recovery herein we would be compelled to follow the attractive nuisance doctrine upon which this action is expressly pleaded. The attractive nuisance doctrine first came into prominence through the decision of the Supreme Court of the United States in *Railroad Co.* v. *Stout,* 17 Wall. 657, 2 L. Ed. 745, and for a long time that was rather generally approved throughout the Union. There was, however, a later tendency to criticize and in many cases to abandon this doctrine. In this State it was first repudiated in *Ritz* v. *City of Wheeling, supra.* In that case a five year old boy was drowned in an unguarded reservoir maintained by the City of Wheeling to furnish water for public use. The reasoning of Judge Brannon in that case presents a full and complete argument against a return to that doctrine. We cannot add anything to the view therein expressed. We think it fully sustains our view that it would be unwise to follow the attractive nuisance doctrine, and, as stated above, we do not think we could sustain recovery in this case without so doing.

There are no disputed facts in this case. The question of law raised on undisputed facts was for the circuit court. That court committed no error in deciding that question in favor of the defendant, in directing a verdict in his favor, and entering judgment thereon. Its action in so doing is affirmed.

*Affirmed.*