**UNION CARBIDE & CARBON CORP.
v. PETERS et al.

No. 6610.**

United States Court of Appeals
Fourth Circuit.

Argued June 17, 1953.

Decided Aug. 4, 1953.

1. Two judges having meanwhile retired.

E. Glenn Robinson and Charles C. Wise, Jr., Charleston, W. Va. (Campbell, McClintic, James & Wise, Charleston, W. Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Southern District of West Virginia, in favor of the plaintiffs, father and son, in their separate actions to recover damages for medical expenses and personal injuries respectively, alleged to have been caused by defendant's negligence. The actions were consolidated and tried without a jury. The District Court found for the plaintiffs, awarding the sum of $3,000.00 for medical expenses and $10,000.00 for personal injuries. Defendant's motion to set aside the findings of the Court, to reduce the amount of the awards, or in the alternative to enter judgment for the defendant *non obstante veredicto* was overruled and from the judgment of the Court, entered April 9, 1953, the defendant has appealed.

Defendant is a manufacturer of chemical products and various kinds of gases are part of its raw materials. One of its largest plants is located in South Charleston, West Virginia, on the south bank, and on an island, of the Kanawha River, about five miles west of and downstream from Charleston. To transport gas to this plant, defendant maintains and operates some 340 miles of high pressure pipe lines.

On the north bank of the river, about ten miles upstream from Charleston, is the defendant's Diamond Plant. There gases are treated, mixed, recompressed and transmitted by pipe lines to South Charleston. Two six-inch and two four-inch pipe lines cross under the river from the Diamond Plant to the south shore. These lines are owned by the defendant and are used to transport gases under pressures ranging from 100–145 pounds per square inch.

On the river bank at each end of the river crossing are valves or gates, where the gases can be shut off from flowing through the pipe lines, or sent through oth-

J. Campbell Palmer, III, Charleston, W. Va., for appellant.

er or different lines. These valves or gates are situated in a sunken box known as a valve box. The gate valve box at the scene of the accident here involved was originally constructed of wood about 1927. The four pipe lines running through it were laid during the years 1927 to 1936.

Some three to five weeks prior to the accident, defendant replaced the wooden box with a new box constructed principally of cinder blocks. This new gate box, as well as the old one, was approximately eight feet square and five feet deep. Located on the south bank of the river about 15 feet from the water line, it was level with the ground on the uphill side, and about a foot or so above ground on the downhill or river side. The top of the box was covered by a two-section wooden latticed platform. One section was three feet by seven feet, weighing 105 pounds, the other four feet by seven feet, weighing 135 pounds. The planks in each section were oak or pine, two by twelve inches, held together with two battens and spaced one to two inches apart.

For many years persons residing in the area gathered on the river bank for fishing and other pursuits. The box in question was used as a platform upon which to sit. Children in the neighborhood habitually used the area as a playground, and were accustomed to playing on and around the gate box, running over it and jumping off it. Defendant knew of these practices but took no steps to prohibit or discourage them.

On October 26, 1951, Wayne Stanley, a boy fourteen years of age, was assisting a neighbor in digging a basement. During a rest period he walked to defendant's gate box nearby. While on top of the box he accidentally dropped a cigarette lighter belonging to his mother through the cracks in one of the box lids. He raised up the smaller lid and called for the infant plaintiff, Donald Peters, then thirteen years of age, to assist him in his efforts to retrieve the lighter. While Stanley held up the lid, plaintiff, who was smaller in physical stature, jumped down into the box, picked up the lighter and attempted to determine whether it was still in good working order.

As Stanley was about to tell him not to try the lighter, the infant plaintiff did so. The spark produced caused a nonexplosive, flash fire of leaking gases which had accumulated in the gate box, burning young Peters severely. He was helped out of the box and taken to a nearby hospital where he remained for thirty-three days. After being incapacitated for some two months, he returned to school, but as a result of the accident, sustained severe scars on the back surfaces of both hands, flexion contracture of the little finger of the left hand, and several keloid scars on his face, ears and neck. At the trial it appeared from the medical testimony that the complete eradication of these injuries could not be expected, although subsequent operations would likely produce ameliorating results.

After plaintiff was removed to the hospital, men living in the area immediately attempted to extinguish the fires still burning in the gate box. One witness stated that the fires continued to burn from 35 to 45 minutes after the accident, while another set the time as 30 to 40 minutes. All of these disinterested witnesses stated that there was leakage of gas from each of the three gate valves in the box and that each of those leaks was burning when they reached the scene. There was also a fourth leak in a weld in one of the two four-inch lines, characterized by some of the witnesses as a "pinhole" leak.

With respect to the issue of the defendant's negligence, the District Court made the following pertinent findings of fact:

"Defendant's gate valve installation in the box at Chesapeake was a dangerous instrumentality.

\* \* \* \* \* \*

"It was not the habit of children or anyone other than defendant's agents to go inside the gate box; but under the circumstances, with children playing around and on the box defendant should reasonably have foreseen that if some valuable article were dropped through the cracks a child would enter the box to retrieve the article.

"Defendant exercised reasonable care in providing for inspections of

the pipes and valves in the gate box; but the circumstances of the accident, particularly the existence of four large leaks, demonstrate that such inspections were ineffective.

"Defendant did not exercise reasonable care, but was negligent in the installation and/or maintenance of the gate valves, in that gas was permitted to escape from all three gate valves to the extent that when lighted, the escaping gas formed a flame from eight to twenty inches in length. This negligence of defendant is established by the circumstances of the case, notwithstanding testimony of its agents that proper installation and maintenance took place. It is not shown that the pinhole leak in the spool was due to negligence of the defendant; but it is shown by a preponderance of evidence that the accumulation of gas came from the gate valves rather than from the pinhole leak; or at all events, that the escaping gas from the valve stems alone would probably have caused the accident."

On the basis of these findings, the District Judge concluded:

"It was the duty of defendant to exercise reasonable care to avoid injury to any children who might play around and upon the gate box; and this duty extended to Donald Wayne Peters who, though a trespasser while in the gate box, was there for the purpose of retrieving an article which had been dropped during the ordinary course of play of other children. It is not necessary that defendant should be able to foresee the exact circumstances attending the accident, but it was reasonably required to foresee that in the course of play around the box some object might be dropped inside through the cracks which would be valuable enough to cause the child to go inside the box to get it out."

The defendant introduced evidence tending to show that its lines were composed of the best obtainable welded pipe, that its gate valves were of standard construction containing factory inserted and tested packing, that its gate valve boxes were of the latest and best possible design, and that a crew of trained men were employed to make periodic inspection and repair of its installations. Defendant's evidence tended to establish that in both construction and maintenance, its activities and precautions were in accord with the customary practices of the industry. Our view of the case, however, makes it unnecessary for us to develop this evidence in detail or resolve its conflict with that of the plaintiffs.

It is not disputed that, in utilizing volatile gases and transmitting them under high pressures, defendant is engaged in handling a dangerous substance, and is under a duty to exercise such care and skill in its operations as are required by the hazardous consequences of its escape. Groff v. Charleston-Dunbar Natural Gas Co., 110 W.Va. 54, 156 S.E. 881; Marshall Window Glass Co. v. Cameron Oil & Gas Co., 63 W.Va. 202, 59 S.E. 959. And, for the purposes of this case, we may assume that the presence of four leaks in one gate box, three of which were situated at the gate valves and which might have been prevented by a proper tightening of the stud bolts thereon, justifies the lower court's finding that the defendant failed to discharge this duty. It does not follow, however, that such failure and the injury to plaintiff flowing therefrom impose liability upon the defendant.

Not every act of carelessness or inadvertence may be characterized as negligence which is actionable in law. One whose conduct falls below the standard prescribed by law, thereby creating a risk of injury to others, is responsible only if danger to others might reasonably be foreseen from such conduct. In this respect, the obligation to guard against the negligent injuring of others is limited to the prevention of those harmful results which reasonable expectability demonstrates are foreshadowed by the risk. As Chief Justice Cardozo stated in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 344, 345, 162 N.E. 99, 100, 101, 59 A.L.R. 1253:

"The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. * * * The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury."

■ Moreover, before one who has been injured may recover for the alleged negligent conduct of another, he must establish himself as one to whom some duty of care is owed. That is, the injured party must show that the misconduct in question is negligence *as to him*, not to others. As the foreseeability of injury to a certain class or classes of individuals causes conduct to be denominated negligence, so it proscribes the liability therefor. As one text writer has stated it: "Negligence in the air, so to speak, will not do." Pollock, Torts, (13th Ed.) p. 468; see also Prosser, Law of Torts, § 31, Unforeseeable Plaintiffs, p. 182, Rest. Torts, Negligence, § 281, comment c., p. 735.

■ In the light of these principles, we are of the opinion that the defendant cannot be held liable for plaintiff's injuries in the case at bar. Even if defendant was careless in permitting gases to escape from its lines and accumulate within its gate box, there is nothing in the record to show that it could reasonably have foreseen that anyone other than its own inspectors would enter the box for any purpose, or that, while there, would cause a spark to be ignited in close propinquity to the escaped gases. Indeed, the evidence is all to the contrary.

It is uncontroverted that there had been no previous notice or evidence by foot prints, interference with the contents of the gate box, or the like, that unauthorized persons had ever entered the box in question or any other box belonging to defendant. Entry of gate boxes by unauthorized persons is unknown to the industry generally as there is nothing in the box calculated to excite the interest of anyone and its contents are plainly visible through the spaces in the latticed lid. All of the witnesses who testified on this point, one of whom had lived in the neighborhood for some twenty years, admitted that they had never seen nor heard of anyone entering a gate box before the accident here involved.

In view of this evidence, we cannot agree with the conclusion of the District Judge that the defendant was reasonably required to foresee that in the course of play some object might be dropped inside the box which would have sufficient value to cause a child to enter the box to retrieve it. In this connection, the defendant strenuously urges that when the infant plaintiff entered the box he became a trespasser, that the District Court so held, and that therefore the defendant owed him no duty other than to refrain from willfully or wantonly injuring him. Simmons v. Chesapeake & O. Ry. Co., 97 W.Va. 104, 124 S.E. 503; Martino v. Rotondi, 91 W.Va. 482, 113 S. E. 760, 36 A.L.R. 6; Dickinson v. New River & Pocahontas Consol. Coal Co., 76 W.Va. 148, 85 S.E. 71.

■ We do not, however, rest our decision upon this narrow ground, but upon the fundamental principle of the law of negligence which limits liability within the orbit of foreseeability. In this context, inquiry regarding plaintiff's status as a trespasser, known trespasser or bare licensee is not only unprofitable but unnecessary. There is nothing in the record to show that the condition of defendant's gate box constituted a risk of harm to anyone, either in or around the box, unless a spark was ignited within the box itself, and, as we have said, this eventuality was not within the range of foreseeable circumstances against which defendant was obligated to take precautions. Not only has the doctrine of "attractive nuisance" been disavowed in West Virginia, Tiller v. Baisden, 128 W.Va. 126, 35 S.E.2d 728; White v. Kanawha City Co., 127 W.Va. 566, 34 S.E.2d 17; but the record contains no evidence that either the interior of the gate box itself or its contents were in any way attractive to outsiders of any age. Therefore it cannot be said that in failing to make the interior of its gate box inaccessible to all but

its own personnel (by hinging and locking the latticed lids), the defendant thereby created an unreasonable risk of harm to children under the ordinary principles of common law negligence. See Tiller v. Baisden, supra, 128 W.Va. at page 128, 35 S.E. 2d at 729.

In addition to the conclusion set out above, we think that the plaintiffs are barred from recovering in this case by reason of the infant plaintiff's contributory negligence. The District Court held that Donald Peters was not guilty of contributory negligence, upon the following findings of fact:

"The presumption applicable in West Virginia that Donald Wayne Peters, as a child under fourteen years of age, was incapable of contributory negligence is not overcome by the evidence. It was shown by defendant's witnesses that in the ordinary course of events there would be no danger whatsoever from igniting a cigarette lighter in the gate box. It was only by reason of the existence of the accumulated gases that the danger arose. This accumulation was the result of defendant's negligence. At the time he lit the lighter, Donald Wayne Peters did not realize that it was a dangerous act."

■ Under the West Virginia law, an infant under the age of fourteen years is presumed not to possess sufficient mental capacity to comprehend and avoid danger. This presumption, however, is rebuttable and the burden of proving the existence of such capacity is upon the defendant. French v. Sinkford, 132 W.Va. 66, 54 S.E. 2d 38; Ewing v. Lanark Fuel Company, 65 W.Va. 726, 65 S.E. 200, 29 L.R.A.,N.S., 487.

The infant plaintiff in the case at bar was 13 years and 7 months old at the time of the accident, and seems to have possessed the average intelligence of those of his age. The record reveals that his father had been a worker in the gas fields for as long as the infant plaintiff could remember, that the infant plaintiff had accompanied his father on trips to the gas fields on several occasions, and that he had been

warned of the dangers of escaping gas. He admitted that he knew of such dangers, especially with regard to igniting a spark or flame in close proximity thereto. Upon examination by the court, he further admitted that he knew the pipe lines in defendant's gate box were leaking, that he had heard them leaking on prior occasions but that he did not think of it when he entered defendant's gate box.

The record also contains the following pertinent testimony of young Peters.

"Q. And as you told us before, you knew enough about gas to know you shouldn't have flame around leaking gas? A. Yes.

"Q. And you forgot it while you were down there? A. I knowed, but I didn't think about it.

"Q. You just forgot it and weren't thinking about it? A. No.

\*    \*    \*    \*    \*    \*

"Q. Donald, to clear up something: I believe you testified, on direct examination, you don't recall smelling gas the day you went down there? A. I don't recall smelling—when I got down in it, I forgot about smelling gas, when I got down in the ditch, the gate valve box.

"Q. In other words, you just weren't thinking about the gas, is that right? A. Yes, sir."

■ We think that the record clearly reveals that the infant plaintiff was guilty of contributory negligence. Unquestionably less care is required of an infant than of an adult in similar circumstances, and the obligation of an infant to use due care for his own safety must be measured in the light of his relative maturity, his knowledge, and his capacity to comprehend the dangers of existing conditions.

■ Here it appears that the infant plaintiff not only should have known of the hazard created by escaping gas, but actually did know of it, and fully appreciated the perilous consequences of igniting a spark in close proximity to a leaking gas line. The fact that he momentarily forgot the danger which existed does not excuse

him from the results of his own act. True as it is that the duty to remember imposes a lighter burden upon an infant than upon an adult, we think that the thoughtlessness of the infant plaintiff in the circumstances of this case, bars his recovery, and that of his father.

For the foregoing reasons, the judgment of the District Court is reversed.

Reversed.